**Floyd McVAY, Plaintiff-Appellant,**

v.

**The CINCINNATI UNION TERMINAL COMPANY, Defendant-Appellee.**

**No. 19112.**

United States Court of Appeals
Sixth Circuit.

Oct. 14, 1969.

Andrew B. Dennison, Cincinnati, Ohio, for appellant, White, Getgey & Dennison, Andrew B. Dennison, Cincinnati, Ohio, on brief.

James L. O'Connell, Cincinnati, Ohio, for appellee, Lindhorst & Dreidame, by Robert F. Dreidame, Cincinnati, Ohio, on brief.

Before PHILLIPS, Chief Judge, CELEBREZZE, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Floyd McVay, a railroad train checker, was an employee of The Cincinnati Union Terminal Company on December 3, 1965. He was fifty-six years old, and had been employed by the company for more than seventeen years. On the date above mentioned, his first work assignment was the unloading of baggage from the Chesapeake and Ohio train No. 3, which arrived at the company's terminal at 3:45 P.M. Having finished that work, he awaited the arrival of the Baltimore and Ohio train No. 53. When it arrived, Mr. McVay was one of a crew of five men assigned to remove the baggage from that train. In the baggage car were three "remains,"—a "remains" consisting of a deceased person within a burial casket, incased within a wooden shipping box or crate, all of which will hereafter be referred to as either a "box," "remains," or a "casket." The shipping box had six handles attached to it by screws. There was a metal handle at each end, and two handles were placed on each side of the box. One of the boxes was to be transferred to an L&N train. Mr. McVay proceeded to the box to commence its transfer. It was stipulated that the box weighed between 370 and 445 pounds.

The assistant foreman and Mr. McVay pulled it from the wall of the baggage car and then continued to pull it forward to a double flooring, approximately three-fourths of an inch in height, which ran from one door in the car to the other door. Mr. McVay says that, as they were lifting it over the double flooring, the handle being held by the assistant foreman broke or pulled completely off, and the weight of the box and "remains" was, at that point, being held by Mr. McVay. The assistant foreman testified that a third person, Mr. Ross, a tractor operator at the terminal, also was helping with the lifting. Mr. Ross said that the three men were lifting at the head of the casket. The lifting was for the purpose of placing a roller underneath the front end to facilitate the movement of the box to the door, and after that was done, the assistant foreman went to the rear of the

box to push it. At that time, appellant stated that he felt a sharp severe pain in his back; he thought he had strained himself and that it would work itself out—"I thought it would be all right in a little while." He said nothing to the assistant foreman with whom he had been pushing or lifting the box. He did not mention or report that he strained his back. After the first box was unloaded and was safely on the baggage truck, the second and third boxes were handled by three men—appellant, Perry and Burress. No claim is made by appellant that appellee was guilty of any negligence in connection with the handling of the second and third boxes, each of which was moved by a team of three men.

In his complaint filed in this case, Mr. McVay alleged that while he was working, "one of the lifting handles broke resulting in the weight of said casket being shifted upon plaintiff which caused plaintiff to suffer extreme strain [above mentioned] in which he sustained a tear in the aorta causing the posterior coronary artery to become 'dissected' from the aorta resulting in a thrombosis of the artery," or a myocardial infarction. During all of the time that appellant was engaged in moving the three boxes, he made no statement about any pain or discomfort and did not manifest any such difficulty to anyone until more than a half hour after the myocardial infarction.

Appellant McVay, as a result of his claimed injury, brought an action for recovery of damages arising out of the claimed negligence of The Cincinnati Union Terminal Company. The claimed negligence consisted, principally, of the failure of the company to provide adequate personnel for unloading railroad baggage cars, specifically for the unloading of the casket and body in this case which, he claims, in the course of removal from the baggage car, caused an extreme and unusual strain on appellant, who was helping to unload the casket, resulting in injury to his heart. It is to be noted that three men moved the last two caskets, as well as the first casket. No negligence was claimed because of inadequate personnel moving the last two caskets. No injury resulted from the fact that three men moved these last two caskets. It is only as a result of moving the first casket that appellee is claimed to have been negligent in furnishing inadequate personnel.

The case was tried before a jury which brought in a verdict of no cause of action, on which judgment was entered. Appellant seeks a reversal of the judgment for claimed errors of the trial court in the instructions to the jury. These claimed errors are set forth in nine compendiously-stated issues, covering more than three pages of appellant's brief, which may more briefly be stated as follows:

The court erred in instructing the jury that appellee had no duty to promulgate written or oral rules or practices directing the manner in which remains should be removed from baggage cars; that it had no duty to inspect the handles of the shipping boxes; and that it had no duty to weigh such shipments. The evidence disclosed the weight of the first box moved was under the average weight of caskets unloaded from a baggage car. Further, it claimed that the court erred in failing to instruct the jury that it could consider appellee's conduct as a whole, including the conduct of its employees, the condition of the equipment used, the number of men assigned to the task of unloading, and the customs, practices and rules of appellee relating to the task; that the court erred in failing to distinguish between assumption of risk and contributory negligence; in instructing that the jury could consider appellant's failure to request additional help as bearing on appellee's negligence; in failing to instruct as to appellee's duty to provide a safe place to work; in instructing the jury that if appellant failed to establish appellee's negligence, or that appellant's injury resulted from such negligence, or that if the injury were the result of normal effort in the performance of appellant's duties, the verdict

must be for appellee; in instructing that if the jury found appellant had suffered no symptoms of pain whatsoever until after he had removed two other boxes containing remains, then the verdict must be for appellee; in instructing that appellee was not responsible for a geriatric or aging effect of appellant, and, thereafter, failing to instruct that the existence of a prior physical condition which may have made a person more susceptible to the heart attack with which appellant was afflicted, did not foreclose a full recovery on appellant's claim; and that the court erred in refusing to suppress the filing and use of a deposition, taken for discovery, and which was not filed with the court by the notary, and was thereafter read in evidence.

An examination of the copious appendix of 281 pages discloses no reversible error in the instructions to the jury. None of the medical testimony was incorporated in the appendix, either by appellant or appellee. With regard to the claimed prior physical condition of appellant, concerning which there appears no testimony in the appendix regarding the triggering of any dormant disease that he had, which resulted from the strain of lifting, the court properly instructed the jury that appellant could not recover for any injuries and damages which he sustained as a result of his myocardial infarction, unless he proved by a preponderance of the evidence that appellee was guilty of some negligence in connection with the unloading of the first box from which the handles pulled out, and that such negligence caused appellant's heart attack.

The trial court eliminated from the case all appellant's claims of negligence, except the contention that appellee had not supplied adequate personnel in unloading the baggage cars, and in unloading the first box which was the one that gave rise to appellant's claim of negligence.

As to the claimed error on the part of the trial court in refusing to suppress the filing and use of the deposition in question, and which was neither certified nor filed with the clerk of the court by the notary, counsel for appellant agreed that, since the deponent was, at the time of the trial, more than 100 miles away from the site of the trial, it would not be necessary to have the notary then certify the deposition. The ground of objection was that there was not a prompt certification and filing. It was admitted that the transcript of the deposition had been signed by the deponent after the deposition was taken, and that it was, thereafter, returned to the possession of plaintiff's counsel who continued to hold the deposition in their possession from a time shortly after the deposition was taken until the commencement of the trial. Any party may use a deposition, not merely the party taking it. While appellant relies on the absence of prompt certification and filing under Rule 30(f) of the Federal Rules of Civil Procedure, the failure of such prompt certification and filing should be of no controlling importance when the counsel for the party taking the deposition is fully aware of its contents. The failure promptly to file is harmless where the adverse party saw the deposition prior to trial. The knowledge of the contents of the deposition, when the objecting party had the deposition in his file and elected not to permit it to be certified or filed, nullifies the requirement of prompt filing under Rule 30(f); and the requirement of notice of filing would be waived by the election of the objecting party not to permit it to be certified or filed, when such party has possession of the transcript. The trial court's ruling that the transcript of the deposition could be used, was, under the circumstances above recited, fully justified.

In accordance with the foregoing, the judgment of the District Court is affirmed.