LORI A. STEWART, APPELLANT, V. AMIGO'S RESTAURANT, APPELLEE.

480 N.W.2d 211

Filed February 21, 1992.   No. S-91-464.

Robert R. Moodie, of Friedman Law Offices, for appellant.

Michael K. High, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In her appeal from an award against Amigo's Restaurant, Lori A. Stewart contends that the Nebraska Workers' Compensation Court abused its discretion by not allowing Stewart to obtain a second posthearing deposition of her physician and in permitting Amigo's to use her doctor's deposition as evidence for the award.

Before the injury involved in her compensation claim, Stewart had two orthopedic surgical procedures to her right knee. In 1984, Stewart underwent arthroscopic surgery by Dr. Patrick E. Clare to remove "facette chondromalacia" at the site of her right kneecap and surgically achieve bilateral releases on both of her knees. In February 1989, Dr. Matthew C. Reckmeyer performed arthroscopic surgery on Stewart's right knee regarding a "medial femoral condylar fracture" (a break in the middle of the rounded projection of the femur, or thigh bone).

On December 5, 1989, Stewart, as an associate manager at Amigo's Restaurant, was carrying food products at the restaurant when her right foot slipped on a wet floor, causing Stewart to fall and strike her right knee on the floor. Stewart immediately experienced pain and stiffness in her right knee, but continued to work. Stewart's knee problems persisted intermittently until she became unable to walk, sought medical attention on February 16, 1990, and underwent arthroscopic surgery by Dr. Reckmeyer on February 26. According to Dr. Reckmeyer, Stewart's knee injury consisted of "chondromalacia of the right lateral tibial plateau" (deterioration and softening of cartilage on the surface of the inner bone of the leg, i.e., shinbone) with "medial and lateral synovial plica" (a fibrous band of tissue affecting the lining of the knee joint). Stewart was unable to work from February 26 to April 11, but resumed some light duties in her employment from April 12 to 19. When Stewart continued to have discomfort with her right knee, Dr. Reckmeyer suspected "peroneal nerve symptoms from irritation, possibly scarring"

and believed that surgery was justified for "exploring the peroneal nerve" regarding Stewart's "tib-fib joint." Exploratory surgery was performed on April 30. Later, in view of Stewart's continued knee problem, and after another orthopod examined Stewart, Dr. Reckmeyer, on January 25, 1991, performed surgery on Stewart, namely, a " 'proximal fibular resection and reconstruction [of the] lateral/collateral ligament [of the] right knee.' "

Rehearing commenced in Stewart's case on February 5, 1991. At the rehearing Stewart described her accident and disability, and the court received various hospital records and doctors' notes concerning Stewart's care and treatment for her knee problem, including records pertaining to Stewart's knee surgeries before she fell at Amigo's Restaurant. At the conclusion of the evidence on February 5, Stewart's lawyer requested time to obtain and file the deposition of Dr. Reckmeyer and estimated that the deposition would be filed on March 7 inasmuch as the doctor's deposition had already been scheduled at the time of counsel's request. Also, the lawyer for Amigo's Restaurant asked for Stewart's examination by an orthopedist for the defense. Without objection, both requests were granted.

On February 28, 1991, Stewart obtained Dr. Reckmeyer's deposition. In the course of questioning on direct examination, the following occurred:

Q Dr. Reckmeyer, do you have an opinion, to a reasonable degree of medical certainty, as to whether or not any causal connection exists between the direct fall on the knee which Ms. Stewart reported to you as occurring two or three months prior to your February 16th appointment and the diagnosed conditions which you have described to us that existed in February of 1990?

. . . .

A . . . I'm sorry. I cannot make a direct association between those two.

. . . .

Q . . . All right, why not?

A Several reasons. From the medical standpoint, the findings were consistent with normal use, wear and

tear of the knee, although they could be associated with some element of trauma. The actual findings, three months — two to three months after the injury cannot be necessarily directly related to the reported fall. And the changes that — Some of the changes that were found can also be associated with postarthroscopic evaluation. In other words, her knee had been injured technically from the operation. In other words, an operation does cause some injury of any kind. And she had had two previous arthroscopic operations, including one that involved a lateral release which can cause significant internal scarring, several years before that.

. . . .

Q Now, Doctor, do you have an opinion to a reasonable degree of probability, medical probability, as to whether or not any type of connection exists between the peroneal nerve obstruction that you treated in April of 1990 and the fall directly on the knee that she had reported happened two or three months prior to your February 1990 appointment?

. . . .

A That based on the change in the symptoms postoperatively that she was not, at least to my awareness, complaining of those types of problems prior. The fall was not directly related to the peroneal nerve.

. . . .

Q Now, before February of 1990, Ms. Stewart had had other surgeries with her knee. You've already testified to that. Is that right?

A That's correct.

Q And did these prior surgeries render the knee unstable or prone to additional injury?

. . . .

A Her prior procedures, I do not believe rendered her knee unstable or more susceptible to injury.

Q Do you have an opinion, Doctor, to a reasonable degree of medical probability, as to whether or not the accident where she fell directly on her knee two to three months prior to February 1990 caused, either by

producing a new injury or by aggravating an old injury, any of the injuries for which you have performed surgeries since February of 1990?

. . . .

A I cannot state within a reasonable degree of medical certainty whether that fall contributed to or caused those problems.

Stewart's lawyer then filed a motion on March 7, 1991, for an extension of time to obtain a second deposition from Dr. Reckmeyer and, as support for that request, offered counsel's affidavit which included:

Dr. Reckmeyer · gave testimony which contradicted previous statements and medical · records and were surprises to the affiant inasmuch as they were different than answers and information previously supplied by Dr. Reckmeyer.

. . . [S]ubsequent to said deposition, the undersigned reported the results of the deposition to the plaintiff. The plaintiff conferred with Dr. Reckmeyer and Dr. Reckmeyer contacted the undersigned affiant, explaining that he had been confused by several questions and that his testimony would have been significantly different had said confusion not occurred.

Dr. Reckmeyer's deposition was filed with the compensation court on March 8, 1991. Amigo's Restaurant objected to any allowance of time for Stewart's obtaining another deposition from Dr. Reckmeyer and declined to pursue the medical examination previously authorized by the court.

Regarding Stewart's request for time to obtain Dr. Reckmeyer's second deposition, the compensation court, on March 15, 1991, ruled on Stewart's motion and noted:

The thrust of the plaintiff's position to retake the deposition of Dr. Reckmeyer as set forth in the affidavit is that the plaintiff's attorney was surprised by the answers Dr. Reckmeyer gave at the deposition and that the deponent was confused. The Court has reviewed in detail the arguments of the parties and the deposition of Dr. Reckmeyer and can find no evidence that the plaintiff's attorney was surprised by Dr. Reckmeyer's answers or

more importantly that Dr. Reckmeyer was confused. In addition the Court notes that there were numerous off the record discussions during the taking of deposition which allowed the plaintiff to alleviate any confusion the deponent may have had which again is not indicated by the record. There are also several examples of the deponent being asked to explain his answers which he does with clarity.

The compensation court, therefore, concluded:

The Court finds based upon its review of all the evidence and arguments of the parties that there does not exist sufficient reason to allow the plaintiff to retake the deposition of Matthew C. Reckmeyer, M.D., and that the plaintiff's Motion For Extension Of Time to retake the deposition of Dr. Reckmeyer is denied.

In view of the court's refusal to allow Dr. Reckmeyer's additional deposition, Stewart, on March 21, objected to the court's receiving the Reckmeyer deposition as evidence for the rehearing, and, as a basis for that objection, stated:

Lori A. Stewart . . . objects to the offer, as evidence, of the deposition . . . of [Dr. Reckmeyer] which has been or may be made by the defendant.

. . . After taking said deposition . . . plaintiff has elected and chosen not to offer said deposition into evidence.

The deadline for submission of said deposition was March 7, 1991. Said deadline came and went without the submission of said deposition.

Furthermore, said deposition was requested by the plaintiff and was taken at the plaintiff's expense. Its use as trial testimony should be at the plaintiff's discretion.

On April 17, 1991, the compensation court, after considering Stewart's motion to exclude the Reckmeyer deposition, determined that "the deposition of Doctor Reckmeyer was taken for evidentiary purposes and as one of the plaintiff's treating physicians would have information beneficial to a full consideration of the plaintiff's claim." Noting that Amigo's Restaurant "now would offer the deposition testimony of Dr. Reckmeyer," the compensation court ordered that "the deposition of Dr. Matthew Reckmeyer shall be received in

evidence at the rehearing."

In its "Award on Rehearing," after awarding Stewart benefits for her temporary disability, the compensation court referred to Dr. Reckmeyer's deposition testimony that he was unable to medically determine any cause-and-effect relationship between Stewart's fall on December 5, 1989, and the diagnosed condition in February 1990, which was the basis for Stewart's knee surgery in April 1990 and January 1991. Further in its award, the court stated that Stewart had "failed to meet her burden of proof" for compensability of her medical expenses from the knee operations in April 1990 and January 1991. Also, the compensation court concluded that Stewart had failed to prove that she sustained "any permanent impairment" of her right knee.

## ABUSE OF DISCRETION

[A] judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

*State v. Juhl*, 234 Neb. 33, 43, 449 N.W.2d 202, 209 (1989). Accord, *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990); *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988); *Bump v. Firemen's Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986); *Younkin v. Younkin*, 221 Neb. 134, 375 N.W.2d 894 (1985).

## PROCEDURE IN THE
## WORKERS' COMPENSATION COURT

Neb. Rev. Stat. § 48-163 (Reissue 1988) provides in part:

The Nebraska Workers' Compensation Court may adopt and promulgate all reasonable rules and regulations necessary for carrying out the intent and purpose of the Nebraska Workers' Compensation Act and shall administer and enforce all of the provisions of such act, except such as are committed to the Supreme Court.

Also, Neb. Rev. Stat. § 48-168 (Reissue 1988) states: "The Nebraska Workers' Compensation Court shall not be bound

... by any technical or formal rules of procedure ...."

*Stewart's Request for a Continuance.*

Rule XXIII of the Nebraska Workers' Compensation Court's Rules of Procedure (1991) includes the following provision for a continuance: "No continuance will be granted in any event unless good cause is shown and none within two weeks of the date of hearing unless an emergency arises."

As we expressed in *Wachtel v. Beer*, 229 Neb. at 402, 427 N.W.2d at 63: "[A] motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion." See, also, *State v. Fleming*, 223 Neb. 169, 388 N.W.2d 497 (1986).

Although we realize that Nebraska statutes prescribing procedure for a civil action are inapplicable to an action in the Nebraska Workers' Compensation Court, see § 48-168, Rule XXIII clearly requires a showing of "good cause" for a continuance. As an analog for Stewart's case, we refer to Neb. Rev. Stat. § 25-1148 (Supp. 1991) concerning the procedure for a continuance in Nebraska courts other than the Workers' Compensation Court. Construing § 25-1148 and its requirement of a showing to justify a continuance, we have stated: "An application for continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of proceedings." *Williams v. Gould, Inc.*, 232 Neb. 862, 884, 443 N.W.2d 577, 591 (1989).

The affidavit offered by Stewart for a continuance does not identify the questions that engendered, and answers that reflected, Dr. Reckmeyer's purported confusion. Rather than expressing a specific statement about particular questions and answers, the affidavit contains a somewhat indefinite characterization of the situation: "[Dr. Reckmeyer] had been confused by several questions and ... his testimony would have been significantly different had said confusion not occurred." Which questions were confusing, and, correspondingly, which of Dr. Reckmeyer's answers show the physician's confusion? Perhaps definite information, imparted directly by Dr. Reckmeyer's affidavit rather than through the conduit of

counsel's affidavit, might have more graphically presented Dr. Reckmeyer's problematic confusion. Nevertheless, it becomes apparent that the area of Dr. Reckmeyer's claimed confusion relates to the questions and answers concerning the physician's opinion on causation, that is, whether Stewart's fall on December 5, 1989, caused an injury which resulted in disability and medical expenses compensable under the Nebraska Workers' Compensation Act. From a review of Dr. Reckmeyer's deposition, our conclusion is substantially the same as that reached by the compensation court: Counsel's questions on causation were unequivocal. Dr. Reckmeyer answered the questions asked, and even articulated cogent reasons for his answers. If there was any confusion surrounding the doctor's answers, counsel had the opportunity to eliminate any confusion and elicit clarification by additional questions, either immediately in the course of direct examination of the physician or after a recess during which the doctor might have collected his thoughts or thoughts from someone else. Under the circumstances, we are unable to conclude that the compensation court abused its discretion in denying additional time for Stewart's obtaining a second deposition from Dr. Reckmeyer.

*Defendant's Use of Deposition Obtained by Plaintiff.*

Rule XXI of the Nebraska Workers' Compensation Court's Rules of Procedure (1991) states in part:

> Without limiting the Compensation Court in any manner as to the taking and furnishing of evidence, the Compensation Court will recognize and accept depositions, interrogatories, requests for admissions and discovery proceedings which are in conformance with the Nebraska Discovery Rules For All Civil Cases provided they do not delay the holding of hearings or rehearings.

Neb. Ct. R. of Discovery 32(a) (rev. 1989), regarding use of depositions in court proceedings, provides in pertinent part: "Any part or all of a deposition . . . may be used against any party who was present or represented at the taking of the deposition . . . ."

The language of Rule 32(a) itself, with its express and

unambiguous provisions, is sufficient authority that, pursuant to Rule 32(a), use of a deposition is not restricted to the party taking the deposition; rather, any party who was present or represented at the taking of the deposition may use the deposition. The Nebraska Discovery Rules, generally, have counterparts in the Federal Rules of Civil Procedure. In considering the question of prompt filing required by Fed. R. Civ. P. 30(f) for use of a deposition, the court stated in *McVay v. Cincinnati Union Terminal Company*, 416 F.2d 853, 856 (6th Cir. 1969):

> Any party may use a deposition, not merely the party taking it. While appellant relies on the absence of prompt certification and filing under Rule 30(f) of the Federal Rules of Civil Procedure, the failure of such prompt certification and filing should be of no controlling importance when the counsel for the party taking the deposition is fully aware of its contents. The failure promptly to file is harmless where the adverse party saw the deposition prior to trial. The knowledge of the contents of the deposition . . . nullifies the requirement of prompt filing under Rule 30(f) . . . .

See, also, *Green v. Williams*, 90 F.R.D. 440 (E.D. Tenn. 1981) (any party may use a deposition).

Stewart sought Dr. Reckmeyer's deposition to supply the compensation court with the physician's testimony concerning Stewart's injury and subsequent condition; hence, the Reckmeyer deposition was the means of presenting evidence to the compensation court on issues involved in the litigation between Stewart and Amigo's Restaurant. Under the circumstances, we find nothing which indicates that the Nebraska Workers' Compensation Court abused its discretion in allowing Amigo's Restaurant to use the Reckmeyer deposition.

## CONCLUSION

We find that Stewart's assignments of error are without merit; consequently, the award of the Nebraska Workers' Compensation Court is affirmed.

AFFIRMED.