IN RE INTEREST OF AZIA B., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE, v. MONIQUE B., APPELLANT, AND STEVEN C., APPELLEE AND CROSS-APPELLANT.

626 N.W. 2d 602

Filed April 24, 2001. No. A-00-666.

Kimberly A. Dunovan, of Nebraska Legal Services, for appellant.

James E. Reisinger, of Reisinger Law Office, for appellee Steven C.

James S. Jansen, Douglas County Attorney, and Karen Kassebaum Nelson, for appellee State.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

CARLSON, Judge.

## I. INTRODUCTION

Monique B., natural mother of Azia B., appeals from the order for termination of her parental rights over Azia pursuant to Neb. Rev. Stat. § 43-292(2) and (6) (Reissue 1998). Stephen C., the natural father of Azia, whose parental rights were terminated pursuant to § 43-292(2), cross-appeals termination of his parental rights. For the reasons set forth below, we affirm both terminations.

## II. BACKGROUND

Azia was born on February 5, 1998. On February 6, in an action not directly at issue in this case, an affidavit for the removal of Azia from Monique's care was entered in the separate juvenile court of Douglas County. The State filed a petition seeking custody of Azia on the ground that Azia had been exposed to cocaine in utero. The petition was granted on February 9, and at 5 days of age, Azia was placed in foster care. Monique successfully completed outpatient chemical dependency counseling and parenting classes and worked with a family support worker. Azia was returned to Monique's custody on April 3, and the juvenile court terminated its jurisdiction in that case on July 15.

Also in July 1998, Stephen, imprisoned at the Nebraska State Penitentiary for assaulting a police officer, took a "buccal swab test" that confirmed that he is Azia's father. Stephen was released from prison on September 4. After Stephen's release from prison, Steven and Monique resumed their previous relationship, sharing several residences with Azia. On February 6, 1999, Stephen and Monique separated, Azia staying with Monique. On March 27, Stephen learned for the first time that Azia had tested positive for cocaine at birth. Stephen went to

Monique's residence and struck her "[a] couple of times," "split[ting] open her forehead"; Monique's injury required stitches. Azia was present in the residence, but not in the room where Monique was struck.

Later that same day, Stephen turned himself in to the Omaha Police Department. Stephen was incarcerated in the Douglas County jail from March 28 through October 17, 1999. The record shows that on October 17, Stephen was transferred to the Nebraska State Penitentiary.

On May 21, 1999, the State filed a second petition (the instant petition) alleging that Azia came within the purview of the Nebraska Juvenile Code because of the faults or habits of Monique. Specifically, the petition alleged that on or about May 19, Monique had been arrested for solicitation and that Monique's use of alcohol or controlled substances impaired her ability to parent Azia. It is uncontroverted that an amended petition, not included in the record before us, was filed on or about June 3, seeking a similar adjudication with regard to Stephen. Azia was returned to foster care on June 10. In June, Josephine Glass was assigned as the Child Protective Services worker for Azia. Glass developed a rehabilitation plan for Monique, including a chemical dependency evaluation, income and housing components, and adequate visitation with Azia. On October 13, the juvenile court entered an order finding that Monique had admitted to the allegations of the petition and that Azia was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998). The court placed custody of Azia with the Nebraska Department of Health and Human Services. On December 20, the juvenile court entered a similar order with regard to Stephen.

On February 22, 2000, the State moved to terminate the parental rights of both parents. With regard to Monique, the petition alleged that termination was appropriate with regard to two provisions of § 43-292. First, the State alleged that termination was appropriate pursuant to § 43-292(2) in that Monique had substantially and continuously or repeatedly neglected Azia because Azia had tested positive for cocaine at birth, because Monique had failed to consistently visit her, and because Monique lacked a legal source of income and safe and adequate

and stable housing, and in that Azia had been twice placed in foster care and continuously in foster care since May 1999. The State also alleged that termination was appropriate pursuant to § 43-292(6) in that Monique had failed to correct conditions leading to the initial adjudication. Specifically, the State alleged that Monique had failed to complete a previously ordered chemical dependency evaluation, had failed to obtain and maintain a legal source of income, had failed to obtain and maintain adequate housing, and had failed to maintain minimum visitation with Azia.

With regard to Stephen, the State alleged that termination was appropriate pursuant to § 43-292(2) in that Stephen had been repeatedly incarcerated, lacked a legal source of income, and "engage[d] in angry, violent conduct" that was seriously detrimental to Azia, and in that Azia had been in foster care twice in 2 years and continuously since May 1999. In the motion, the State further alleged that termination of the parental rights of both parents was within Azia's best interests.

The termination of parental rights petition was heard on May 5 and 16, 2000. Monique was not present, and testimony at the hearing showed that Monique had been in custody of the Wisconsin Department of Corrections since March for violation of probation. At the outset of the hearing, each parent moved for a continuance. Monique's counsel advised the court that Monique "would be in a halfway house . . . toward the end of July or first part of August and, therefore, be eligible to travel and . . . present for a hearing." Stephen's counsel premised his motion for continuance on the ground that he had been able to meet with Stephen only the night before the hearing. Both motions for continuance were denied. Monique's counsel then moved to have her participate telephonically. That motion was also denied. The hearing then proceeded, with counsel for each parent calling witnesses and offering evidence. Stephen testified on his behalf. On May 23, the juvenile court entered an order finding that the State had proved each of its allegations by clear and convincing evidence and terminating both parents' parental rights over Azia.

Monique appeals, and Steven cross-appeals. See Neb. Ct. R. of Prac. 1C and 1E (rev. 2000).

## III. ASSIGNMENTS OF ERROR

Monique makes three assignments of error: The juvenile court erred in (1) refusing to make it possible for her to participate in the termination hearing, either personally or telephonically; (2) finding that she had been afforded a reasonable time to rehabilitate herself; and (3) finding that termination of Monique's parental rights was in Azia's best interests. On cross-appeal, Stephen asserts that (1) he was denied effective assistance of counsel; (2) the juvenile court abused its discretion in denying his motion to continue, which in turn denied him a fair adjudication; and (3) the juvenile court erred in finding that the State presented evidence sufficient to warrant termination of his parental rights.

## IV. STANDARD OF REVIEW

In an appeal from a juvenile court order terminating parental rights, the appellate court tries factual questions de novo on the record; while appellate review is independent of the juvenile court's findings, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999). An order terminating parental rights must be based on clear and convincing evidence. *Id.* A juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *Id.*

Whether a party was provided effective assistance of counsel presents a question of law. See *State v. Patterson*, 232 Neb. 304, 440 N.W.2d 242 (1989). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Ethanair Corp. v. Thompson*, 252 Neb. 245, 561 N.W.2d 225 (1997).

Whether to allow a parent who is incarcerated to attend a termination hearing is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in

the absence of an abuse of discretion. *Johnson v. Ford New Holland*, 254 Neb. 182, 575 N.W.2d 392 (1998).

## V. ANALYSIS

### 1. MONIQUE'S APPEAL

#### (a) Monique's Motions for Participation

■ Monique argues first that the juvenile court abused its discretion by denying her motion for a continuance. At the threshold, we note that an application for a continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of the proceedings. Neb. Rev. Stat. § 25-1148 (Reissue 1995); *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992). An oral request is not sufficient to comply with this requirement. *Gutierrez v. Gutierrez*, 5 Neb. App. 205, 557 N.W.2d 44 (1996) (denying wife's request for continuance on basis that it was merely oral and holding that application for continuance must be in writing and supported by affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of proceedings; oral request is insufficient). Failure to comply with § 25-1148 is relevant as to whether the trial court abused its discretion. *State v. Perez*, 235 Neb. 796, 457 N.W.2d 448 (1990). In the instant case, no written request or affidavit is found in the record regarding the motion to continue, which was denied by the court on the day of trial. As such, we cannot say that the denial of this continuance was an abuse of discretion.

■ More fundamentally, Monique's counsel premised her motion for continuance on the ground that granting the continuance would permit her to be physically present at the hearing. It is well established that the parent-child relationship is afforded due process protection, and, consequently, procedural due process is applicable to a proceeding for termination of parental rights. *In re Interest of L.V., supra.* Procedural due process includes a reasonable opportunity to refute or defend against a charge or accusation, a reasonable opportunity to confront and cross-examine adverse witnesses, and a reasonable opportunity to present evidence on the charge or accusation. *Id.*

However, the Nebraska Supreme Court has held that a parent need not be physically present at a termination of parental rights hearing so long as "a parent has been afforded procedural due process for a hearing to terminate parental rights," *In re Interest of L.V.*, 240 Neb. 404, 416, 482 N.W.2d 250, 258 (1992), bearing in mind that the "concept of due process embodies the notion of fundamental fairness and defies precise definition." *Id.* at 413, 482 N.W.2d at 256-57. Thus, the issue becomes whether Monique's due process rights were otherwise protected in her physical absence.

In *In re Interest of L.V.*, the court set out the following considerations for making such a determination:

> In deciding whether to allow a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, a court may consider the delay resulting from prospective parental attendance, the need for disposition of the proceeding within the immediate future, the elapsed time during which the proceeding has been pending before the juvenile court, the expense to the State if the State will be required to provide transportation for the parent, the inconvenience or detriment to parties or witnesses, the potential danger or security risk which may occur as a result of the parent's release from custody or confinement to attend the hearing, the reasonable availability of the parent's testimony through a means other than parental attendance at the hearing, and the best interests of the parent's child or children in reference to the parent's prospective physical attendance at the termination hearing.

240 Neb. at 416, 482 N.W.2d at 258-59.

The record shows that Monique's counsel examined witnesses and presented evidence at the hearing. There is no showing that she was prevented from offering evidence on her behalf. Instead, she stands on her inability to attend because she was in an out-of-state jail. A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Westgate Rec. Assn. v. Papio-Missouri River NRD*, 250 Neb. 10, 547 N.W.2d 484 (1996). Based upon our review of the

record, we cannot say that the juvenile court abused its discretion in denying her motion to continue the proceedings until a date that she could be physically present.

 Monique further argues that the court erred in denying her alternative motion to participate in the hearing by telephone. As with the question of the need for a parent to be physically present at the termination of parental rights hearing, a parent's right to participate telephonically rests on the standard of whether the "parent has been afforded procedural due process," bearing in mind that the "concept of due process embodies the notion of fundamental fairness and defies precise definition." *In re Interest of L.V., supra.* It appears that the first time Monique asserted her request for telephonic participation was at the termination hearing itself, with no showing or assertion that the motion could not have been made prior to that time. Obviously, the mechanics of such participation would require significant and, on this record, unwarranted delay of the proceedings. As the Supreme Court noted in *In re Interest of L.V.*, the possibility of delay is a factor to be considered in the due process equation, especially where, as here, the proceedings have been pending before a juvenile court. As we previously noted, the record shows that Monique's counsel examined witnesses and presented evidence at the hearing. There is no showing that she was prevented from offering evidence on her behalf. We therefore conclude, as we did with regard to Monique's motion for continuance, that due process considerations do not require, on this record, telephonic participation by Monique. We accordingly conclude that the juvenile court did not abuse its discretion in denying her motion to participate telephonically.

(b) Termination of Monique's Parental Rights
 The unequivocal language of § 43-292 imposes two requirements before parental rights may be terminated: (1) the existence of one or more conditions listed in § 43-292 and (2) the best interests of the child. First, requisite evidence must establish, by clear and convincing evidence, the existence of one or more of the circumstances described in § 43-292(1) to (10). In this case, the State has alleged substantial and continuous or repeated neglect, as described in § 43-292(2), and failure to correct condi-

tions leading to adjudication of the children, as described in § 43-292(6). Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

Second, if a circumstance designated in § 43-292(1) to (10) is evidentially established, there must be an additional showing that termination of parental rights is in the best interests of the child, which is the primary consideration in any question concerning termination of parental rights. *In re Interest of B.J.M. et al.*, 1 Neb. App. 851, 510 N.W.2d 418 (1993).

### (i) Statutory Bases for Termination

Termination of parental rights is warranted whenever one or more of the statutory bases provided in § 43-292 is established. The juvenile court found that termination of parental rights was warranted on two statutory grounds, those found in § 43-292(2) and (6). Monique appeals only that portion of the order premised upon § 43-292(6).

We will first address the juvenile court's finding that termination was warranted pursuant to § 43-292(2). That subsection provides that termination of parental rights is warranted where "[t]he parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection."

There is an abundance of clear and convincing evidence in the record showing that Monique refused and neglected to give Azia necessary parental care and protection. The record shows that Azia was placed in foster care at birth because Monique had ingested cocaine while pregnant, that Azia had been returned to foster care a few months after being returned to Monique, that Azia has been in foster care for nearly all the 2 years of her life, that Monique has visited Azia only seven times since May 1999, that Monique is not in a position to parent Azia, and that Monique lacks a legal source of income and adequate housing.

In sum, the evidence shows that Monique has never been able to stabilize her living situation despite help from the State. It is doubtful that she will ever be able to do so. "Children cannot, and should not, be suspended in foster care, nor be made to

await uncertain parental maturity." *In re Interest of C.C. and E.C.*, 234 Neb. 218, 226, 450 N.W.2d 392, 397 (1990). Azia has been in foster care for nearly all of her life. She deserves the security of a permanent home and the opportunity to have a better life than Monique would provide.

 Our finding that the State has established that termination is warranted pursuant to § 43-292(2) makes it unnecessary to address the issue of whether § 43-292(6) provides an additional basis for termination. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994). We accordingly affirm the juvenile court's finding that a statutory basis exists for termination of Monique's parental rights.

### (ii) Best Interests of Azia

We now turn to the primary consideration in a termination of parental rights case, the best interests of Azia. See *In re Interest of J.H. et al.*, 233 Neb. 338, 445 N.W.2d 599 (1989). Glass, the Child Protective Services worker continuously assigned to Azia's case by the Department of Health and Human Services since June 1999, was asked whether she believed that termination of Monique's parental rights would be in Azia's best interests. Glass testified as follows:

> As a CPS worker and with experience and training in that field, it would be in Azia's best interest due to her young age that she be able to have a home where she has a parent that can provide her with care and nurture her and provide her with a safe, risk-free environment and be available to her while she is developing and growing . . . .
>
> . . . .
>
> . . . Children at this age need to have a parent and . . . to be free for adoption. . . . She needs to be able to get into a home and begin to become part of a growing family that will nurture her and support her mentally, psychologically and emotionally . . . .

 That opinion is supported by our de novo review of the record, which plainly shows that Monique is either unwilling or unable to overcome her drug addiction. Affording Monique yet

another opportunity at parenting is neither necessary nor recommended. Instead, the time has come to end the procedural limbo for Azia. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. *Id.* In sum, this record amply supports the conclusion that it is in the best interests of Azia to terminate Monique's parental rights.

## 2. STEPHEN'S CROSS-APPEAL

### (a) Ineffective Assistance of Counsel

On cross-appeal, Stephen first argues that he was not provided with effective assistance of counsel. At the threshold, the State asserts that this defense is available only in criminal cases and that because this is not a criminal case, Stephen cannot raise it. We agree.

The Nebraska Supreme Court has recognized that in fact, all juvenile proceedings are civil rather than criminal in nature. See *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989). Our research yields no Nebraska statute providing such a remedy in civil cases, and no Nebraska cases in which ineffective assistance of counsel was available in a civil action. We conclude that in Nebraska, the claim of ineffective assistance of counsel is reserved for a defendant in a criminal action. We do not ignore Stephen's argument that in a case of this nature, a lawsuit for malpractice, the usual remedy for one dissatisfied with counsel's performance in a civil action, will not accomplish his goal of gaining custody of Azia. However, without Nebraska statutory or case law authority to do so, we decline to recognize the claim of ineffective assistance of counsel in a civil action.

### (b) Motion for Continuance

Stephen next argues that the trial court erred in denying his motion to continue. As previously noted, an application for a continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or

sufficient reason necessitating postponement of the proceedings, and failure to comply with those statutory requirements is relevant as to whether the trial court abused its discretion. In Stephen's case, as with Monique, no written request or affidavit is found in the record regarding the motion to continue, which was denied by the court on the day of trial. More fundamentally, as noted above, Stephen has not shown that denial of his motion for continuance in any way prejudiced the conduct of the hearing or in any other way denied him a substantial right. As such, we cannot say that the denial of this continuance was an abuse of discretion.

### (c) Evidentiary Bases for Termination

Stephen next argues that the State failed to establish by clear and convincing evidence that termination of his rights over Azia was warranted.

### *(i) Statutory Basis for Termination*

The State alleged, and the juvenile court found, that termination of Stephen's parental rights was appropriate pursuant to § 43-292(2), which provides that termination of parental rights is warranted where "[t]he parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Stephen argues that his parental rights were terminated solely, and wrongly, upon the mere fact of his several incarcerations. Although, as Stephen argues, the Nebraska Supreme Court has held that parental incarceration may not be utilized as the sole ground for termination of parental rights, the Supreme Court has further noted that incarceration of a parent does not " 'insulate an inmate from the termination of his [or her] parental rights if the record contains the clear and convincing evidence that would support the termination of the rights of any other parent.' " *In re Interest of L.V.*, 240 Neb. 404, 418, 482 N.W.2d 250, 259 (1992). There, the court quoted with approval the following language from *In re Pawling*, 101 Wash. 2d 392, 679 P.2d 916 (1984):

> "[I]n termination proceedings we do consider ' "a parent's inability to perform his parental obligations because of

imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as [is] the parent's conduct prior to imprisonment and during the period of incarceration." ' . . ."

*In re Interest of L.V.*, 240 Neb. at 420, 482 N.W.2d at 260-61. In *In re Interest of B.A.G.*, 235 Neb. 730, 735, 457 N.W.2d 292, 297 (1990), the Supreme Court has also stated:

During the past 14 years, appellant has voluntarily chosen to violate the law so as to have been convicted of five separate felonies. Although his incarceration on each occasion was nonvoluntary in a sense of the word, his actions that put him in prison were every bit as voluntary as if he had purchased a ticket for a 6-, 7-, or 8-year trek into Siberia.

A recent Nebraska Supreme Court case, *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999), is very much on point on this issue. There, an appellant father had been arrested for assaulting the mother of his daughter during the pendency of the termination proceedings. The father argued that the juvenile court had wrongly premised its finding that he had neglected his daughter solely upon the fact of his imprisonment. The Supreme Court rejected that argument, explaining:

"One need not have physical possession of a child to demonstrate the existence of the neglect contemplated by § 43-292(2). . . .

. . . .

"A parent may as surely neglect a child of whom [he or] she does not have possession by failing to put [himself or] herself in a position to acquire possession as by not properly caring for a child of whom [he or] she does have possession."

. . . At the time Kevin became incarcerated, he knew Kalie had been placed in the custody of DHHS. In spite of this knowledge, he severely beat Angela and was incarcerated as a result. . . .

The conduct resulting in Kevin's incarceration was voluntary on his part. Kevin chose to severely assault Angela, which seriously impaired any possibility of having Kalie

placed in his care. He cannot now complain that he did not have the opportunity to meet Kalie's needs when it was his own conduct that placed him in a position where he could not care for Kalie.

. . . .

The record establishes that Kevin has a history of criminal, violent, and assaultive behavior. . . .

. . . The evidence in this case clearly and convincingly establishes that Kevin neglected his child. He placed himself in a position where he could not care for Kalie. He committed a serious crime at a time when he knew that Kalie had already been placed in the custody of DHHS. The crime leading to Kevin's incarceration was especially violent and, moreover, was perpetrated upon Angela, Kalie's mother.

*In re Interest of Kalie W.*, 258 Neb. at 50-52, 601 N.W.2d at 756-57.

A similar result is appropriate in this case. The record shows that Stephen was convicted of burglary in August 1990 and sentenced to 5 to 10 years' confinement, convicted and sentenced in August 1997 for third degree assault on an officer, sentenced to 205 days in jail in December 1996 for carrying a concealed weapon and failure to appear, and sentenced to 270 days in jail for third degree assault. In short, Stephen has been incarcerated for nearly all of Azia's life. There is no showing, nor could there be, that Stephen's conduct has been other than voluntary and intentional. Although Stephen proclaims he wants to be a parent to Azia, there is no showing on this record that he has provided or would provide the emotional, psychological, and financial support that Azia needs.

For these reasons, we conclude that the evidence clearly and convincingly established that Stephen has substantially and continuously or repeatedly neglected Azia and has refused to provide parental care and protection for her, all without any justifiable reason or excuse for such parental failure. See § 43-292(2).

### (ii) Best Interests of Azia

Glass, the Child Protective Services worker assigned to Azia's case, testified that termination of Stephen's parental

rights was in Azia's best interests. Glass testified that in her opinion,

> due to the length of time that [Stephen] will be incarcerated, his previous history of violence, particularly of a violent relationship with the mother, the best interest for Azia so that she would be able to grow up to be a productive person would be that she would need someone who would be able to support her emotionally, psychologically, mentally and physically and nurture her. [Stephen] would not be able to do that.

Our de novo review of the record supports Glass' opinion. The evidence shows that Stephen has been incarcerated for essentially Azia's entire life for violent behaviors, including an assault on Azia's mother. There is no showing that Stephen will be in a position to parent Azia even when he is again released. As noted above, a child cannot, and should not, be suspended in foster care, or be made to await uncertain parental maturity. *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993). We conclude, based upon our review of the record, that the termination of Stephen's parental rights is in Azia's best interests.

## VI. CONCLUSION

For the reasons set forth above, we hold that the order of the separate juvenile court of Douglas County which terminated the parental rights of Monique and Stephen over Azia should be and hereby is affirmed in all respects.

AFFIRMED.

INBODY, Judge, dissenting.

I must respectfully dissent from the majority opinion regarding Monique's participation in the termination proceedings. In the instant case, Monique has claimed that the juvenile court abused its discretion by not allowing her to participate in the termination hearing, either by being physically present at the hearing or, in the alternative, by participating telephonically.

It cannot be disputed that the parent-child relationship is afforded due process protection and that procedural due process is applicable to proceedings for the termination of parental rights. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). Procedural due process limits the ability of the govern-

ment to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999); *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998); *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996). Further, "[t]he concept of due process embodies the notion of fundamental fairness and defies precise definition." *In re Interest of L.V.*, 240 Neb. at 413, 482 N.W.2d at 256-57. Accord *In re Interest of Amanda H.*, 4 Neb. App. 293, 542 N.W.2d 79 (1996).

In *Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), the U.S. Supreme Court stated that "persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." See, also, *In re Interest of C.P.*, 235 Neb. 276, 284, 455 N.W.2d 138, 144 (1990) ("[t]he right of parents to maintain custody of their child is a natural right, subject only to the paramount interest which the public has in the protection of the rights of the child").

Since it is undeniable that Monique was entitled to due process regarding the proceedings to terminate her parental rights, I now proceed to address whether the procedures afforded Monique comported with constitutional requirements for procedural due process.

## PHYSICAL ATTENDANCE

Monique first claims that the termination hearing should have been postponed in order to allow her to physically attend the termination hearing, since she was incarcerated during the originally scheduled May 2000 date, but would be able to attend the hearing if it were postponed until late July or early August.

The issue of when procedural due process requires a parent's physical presence at a hearing to terminate parental rights was addressed by the Nebraska Supreme Court in *In re Interest of L.V., supra*. The court held that "parental physical presence is

unnecessary for a hearing to terminate parental rights, provided that the parent has been afforded procedural due process for the hearing to terminate parental rights." *Id.* at 416, 482 N.W.2d at 258. If a parent has been afforded procedural due process for a termination hearing, allowing a parent who is incarcerated or otherwise confined in custody of a government to physically attend the termination hearing is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion. *Id.*

The court set forth the factors that may be considered in deciding whether to allow a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, as follows: the delay resulting from prospective parental attendance, the need for disposition of the proceeding within the immediate future, the elapsed time during which the proceeding has been pending before the juvenile court, the expense to the State if the State will be required to provide transportation for the parent, the inconvenience or detriment to parties or witnesses, the potential danger or security risk which may occur as a result of the parent's release from custody or confinement to attend the hearing, the reasonable availability of the parent's testimony through a means other than parental attendance at the hearing, and the best interests of the parent's child or children in reference to the parent's prospective physical attendance at the termination hearing. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

Applying these factors to the instant case, the record reflects that Monique has been incarcerated in Wisconsin since the first part of March 2000 and that her counsel made a written request to continue her case. The request for continuance was heard by the court on April 13 and was denied. The request was renewed orally at the May 5 and 16 hearings. On May 5, Monique's counsel advised the court that although Monique had been incarcerated, Monique would be able to be present for a hearing toward the end of July or the first part of August. Therefore, the hearing would have to be postponed for nearly 3 months in order to allow Monique to be physically present at the termination hearing. Additionally, the adjudication petition with regard to Azia had been pending since May 21, 1999, although the termi-

nation petition was not filed until February 22, 2000. There is no evidence regarding the remaining factors enunciated in *In re Interest of L.V., supra.*

In light of the factors which we have sufficient evidence to consider concerning Monique's physical attendance at the termination hearing, notwithstanding her incarceration, I cannot conclude that the juvenile court abused its discretion in disallowing Monique's physical attendance at the termination hearing. Although the juvenile court did not abuse its discretion in determining that Monique was not entitled to physically attend the termination hearing, the State was still required to afford her procedural due process. This leads me to consider Monique's next claim, i.e., whether she should have been allowed to participate in the termination hearing telephonically.

## TELEPHONIC PARTICIPATION

The second part of Monique's due process claim is that the juvenile court should have granted her request to participate in the termination hearing via telephone. Stated another way, I believe that the crux of Monique's claim is the issue of whether a parent who is prevented from attending a termination hearing because of incarceration or otherwise confined in government custody is entitled by due process to have the court fashion an alternative procedure to permit the parent to respond to matters presented by the State.

The U.S. Supreme Court stated in *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972): "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard. . . .' " Accord *In re Interest of L.V., supra.* See, also, *In re Interest of Natasha H. & Sierra H.,* 258 Neb. 131, 602 N.W.2d 439 (1999). "When a person has a right to be heard, procedural due process includes . . . a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation . . . ." *In re Interest of L.V.,* 240 Neb. 404, 413-14, 482 N.W.2d 250, 257 (1992). See, *Fuentes v. Shevin, supra*; *Goldberg v. Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the U.S. Supreme Court adopted a three-part test detailing the criteria which govern the inquiry concerning whether due process has been satisfied in a particular case: the court must weigh the private interest that will be affected by the proceeding, the risk to the parent of an erroneous deprivation, and the government's interest in making the determination. See *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (stating that "the nature of the process due in parental rights termination proceedings turns on a balancing" of factors specified in *Mathews*). See, also, *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999).

The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Ethanair Corp. v. Thompson*, 252 Neb. 245, 561 N.W.2d 225 (1997). The extent to which procedural due process must be afforded a recipient is influenced by the extent to which the recipient may be condemned to suffer grievous loss. *In re Interest of Natasha H. & Sierra H., supra; In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

As to the first element of *Mathews v. Eldridge, supra,* a parent's interest at stake is obviously profound—the possibility that the parent will be permanently deprived of fundamental parental rights. *In re Interest of Kantril P. & Chenelle P., supra.* See *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991). Thus, " ' "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." ' " *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. at 463, 598 N.W.2d at 739. Likewise, regarding the third element of the *Mathews* analysis—the State's interest—I acknowledge the State's interest in the protection of the welfare and interests of children. See *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 416 N.W.2d 551 (1987). This leaves for consideration the second element of the *Mathews* analysis, which is the risk to the parent of an erroneous deprivation.

In *CY & F Dept. v. Ruth Anne E.*, 126 N.M. 670, 974 P.2d 164 (N.M. App. 1999), the New Mexico Court of Appeals considered the extent to which due process requires a court to fashion procedures to permit an incarcerated parent to respond to matters presented by the State. In that case, the issues before the children's court were whether the parent was complying with a treatment plan and using his best efforts to work toward a reunification of the family unit. The New Mexico Court of Appeals determined that the parent's due process rights were violated by the court's refusal to continue the hearing or adopt other procedures to permit the parent's meaningful participation in the hearing because the parent was denied an opportunity to defend against the allegations, to confront and cross-examine witnesses, and to present evidence on his behalf.

Likewise, in *Orville v. Division of Family Services*, 759 A.2d 595 (Del. Super. 2000), the Delaware Supreme Court held that the lower court did not afford an incarcerated parent her constitutional right to due process because it failed to provide her an opportunity to participate in a meaningful manner, either by telephone during the entire termination hearing or by permitting her to review a reproduction of the case against her before presenting her own case.

*In re Adoption of Edmund*, 50 Mass. App. 526, 739 N.E.2d 274 (2000), involved a decree dispensing with the need to obtain a natural father's consent to the adoption of his child. On the date of the trial, counsel for the natural father informed the trial court that his incarcerated client was ready to participate in the proceedings via telephone conferencing; however, efforts to set up the telephone conference proved unsuccessful due to improper functioning of the necessary equipment. Counsel then sought to continue the trial until such time as the father could appear or until the telephonic conferencing could be conducted. The trial court denied the motion, basing its decision largely on counsel's failure to notify the court in advance of his election to proceed by telephone conference, which the court concluded would have afforded an opportunity to ensure that the necessary equipment was functioning properly. The hearing was conducted, and the court entered its order dispensing with the need for either parent's consent to adoption. The father appealed the

decision, claiming that he was not afforded a meaningful opportunity to be heard.

On appeal, the Massachusetts Court of Appeals found that the natural father's right to procedural due process was not protected "because the father had made timely and persistent requests of the courts for leave to appear which were denied, he specifically sought to participate through the court-sanctioned mechanism of telephone conferencing, and no other procedure to respond was afforded to him." *Id.* at 529-30, 739 N.E.2d at 277.

It seems apparent that the risk of an erroneous deprivation of parental rights is magnified unless incarcerated parents are allowed to consult with counsel; to present evidence, including rebuttal evidence; and to confront the State's witnesses. See *In re Adoption No. 6Z980001*, 131 Md. App. 187, 748 A.2d 1020 (2000). It is my opinion that to satisfy due process, an incarcerated parent must have an opportunity for meaningful participation in the termination process, including the termination hearing. Such participation can occur in various ways, other than physical attendance, such as an opportunity to "participate" meaningfully by telephone, or review transcripts of witness testimony and provide rebuttal testimony, either via deposition or telephonic connection to the courtroom. *In re Baby K.*, 143 N.H. 201, 722 A.2d 470 (1998). See, e.g., *In re Adoption No. 6Z980001, supra* (parent submitted deposition testimony prior to trial, was provided with transcript from State's case, and was given opportunity to submit affidavit in response); *In Interest of Baby Doe*, 130 Idaho 47, 936 P.2d 690 (Idaho App. 1997) (following evidentiary hearing, parent permitted to present testimony through telephone deposition and attorney allowed to call additional witnesses at later time if additional evidence is developed during deposition); *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992) (procedural due process satisfied where, after State's evidence, testimony transcribed, parent testified via telephone in resumed termination hearing and parent was given opportunity to recall State's witnesses for recross-examination, and to call additional witnesses on parent's behalf); *State ex rel. Juv. Dept. v. Stevens*, 100 Or. App. 481, 786 P.2d 1296 (1990) (incarcerated father not deprived of due process rights where father testified by telephone and consulted with counsel by tele-

phone, counsel was able to cross-examine adverse witnesses meaningfully, and father's testimony followed that of adverse witnesses point by point); *In re Randy Scott B.*, 511 A.2d 450 (Me. 1986) (incarcerated father's constitutional rights held adequately protected where his deposition was admitted in evidence and counsel declined opportunity to open record after trial); *In re Juvenile Appeal*, 187 Conn. 431, 446 A.2d 808 (1982) (incarcerated father's due process rights were protected where father received transcripts of first hearing and discussed testimony with counsel and participated via telephone in second hearing held 3 months later). Compare *Dependency of M.S.*, 98 Wash. App. 91, 988 P.2d 488 (1999) (denial of incarcerated parent's request to testify at termination hearing by telephone was not violative of due process where request not made until day of hearing and trial counsel's offer of proof adopted guardian ad litem's testimony as same as parent would have given if parent had testified and court gave parent opportunity to present affidavit after hearing and termination order); *In re Baby K., supra* (telephonic participation did not satisfy due process where incarcerated parent could only hear counsel's voice and could not communicate with court, possibly placing greater burdens on counsel and affecting counsel's ability to represent client's interests including ability to respond effectively to evidence presented and increasing risk of erroneous determination). But see, *Matter of Adoption of J.W.M.*, 532 N.W.2d 372 (N.D. 1995) (alleged denial of due process caused by court's denial of incarcerated parent's request for transcript of adoption hearing for review and possible cross-examination of adverse witnesses did not result in unacceptable risk of erroneous factual decision under particular circumstances of this case).

Furthermore, juvenile courts should be given some flexibility, consistent with the individual facts present in each case, to determine the precise method of participation necessary to ensure that a parent has a meaningful opportunity to respond to the evidence presented at trial and such determination should generally be left to the discretion of the juvenile court. See *In re Adoption of Edmund*, 50 Mass. App. 526, 739 N.E.2d 274 (2000).

In the instant case, Monique, since her request for a continuance had been denied, specifically requested that she be allowed

to participate in the termination hearing by telephone. Although Monique did not make her request to participate in the termination hearing by telephone until the day of the hearing, she had previously requested that the hearings be continued so that she could be physically present at the hearings. It was after her requests for leave to appear were denied that she specifically sought to participate through the court-sanctioned mechanism of telephone conferencing. This request again was denied, and Monique was not given any other procedure to personally respond to the State's evidence against her. This is especially grievous because Monique was in the best position to refute the charges regarding substantial and continuous or repeated neglect of Azia and failure to correct conditions leading to Azia's adjudication.

Finally, in its decision to deny Monique's request to participate in the termination hearing via telephone, the juvenile court relied, at least in part, upon Neb. Rev. Stat. § 43-278 (Reissue 1998), which the juvenile court interpreted to prohibit telephonic testimony in termination hearings. This section provides, in pertinent part: "All communications, notices, orders, authorizations, and requests authorized or required in the Nebraska Juvenile Code, with the exception of any adjudication hearing, disposition hearing, or hearing to terminate parental rights, may be made by telephone when other means of communication are impractical as determined by the court." Although this statute prohibits adjudication, disposition, and termination hearings to be entirely conducted by telephone, in my opinion, this statute does not prohibit a parent's telephonic participation in a termination proceeding when the parent is unable to be physically present.

I am mindful of the need for expeditious determination of cases involving the termination of parental rights, of the need for finality in termination cases, and of the importance of stability and permanence in the lives of children. At the same time, courts cannot ignore a parent's constitutional liberty interest in the care and custody of his or her children. Thus, in my opinion, before the juvenile court can irrevocably sever the parent-child bond, it must ensure that the parent is given a full and fair opportunity to present evidence on his or her behalf and to defend his or her parental rights. It is my opinion that in the instant case,

Monique was deprived of that opportunity. Consequently, I would reverse the juvenile court's judgment and remand the cause for further proceedings.