IN RE INTEREST OF ANDREW M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
KATHLEEN M., APPELLANT.
643 N.W.2d 401

Filed April 23, 2002.   No. A-01-593.

Eileen Reilly Buzzello, of Holthaus Law Office, for appellant.

James S. Jansen, Douglas County Attorney, and Kim B. Hawekotte for appellee.

IRWIN, Chief Judge, and HANNON and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

Kathleen M. appeals from the April 19, 2001, order of the Douglas County Juvenile Court terminating her parental rights to Andrew M., Ashley M., Thomas M., Troy M. II, and Megan M. upon a finding that the children are within the meaning of Neb.

Rev. Stat. § 43-292(2), (6), and (7) (Reissue 1998). For the reasons recited herein, we affirm.

## STATEMENT OF FACTS

Kathleen is the natural mother of Andrew, Ashley, Thomas, Troy, and Megan. The five minor children were removed from Kathleen's home on July 22, 1999. The Douglas County Juvenile Court found that the five children were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998). Kathleen was ordered by the court during a review and permanency hearing to (1) complete a psychiatric evaluation, (2) attend individual counseling with a licensed mental health practitioner or therapist, (3) participate in a family preservation program, (4) consistently attend visits with her children, (5) obtain and maintain stable housing, and (6) obtain and maintain a legal source of income. On December 15, 2000, the State filed a motion to terminate Kathleen's parental rights to Andrew, Ashley, Thomas, Troy, and Megan. The State specifically alleged that pursuant to § 43-292(2), termination was appropriate because Kathleen had substantially and continuously or intentionally neglected and refused to give her children necessary parental care; pursuant to § 43-292(6), termination was appropriate because Kathleen failed to comply with a reasonable plan of reunification; and pursuant to § 43-292(7), termination was appropriate because the five minor children had been continuously in out-of-home placements for over 15 of the past 22 months.

The State's petition for termination of Kathleen's parental rights was heard on March 13 and 14, 2001. The State called Dr. Lisa Christensen, a Family Service licensed mental health practitioner who provided counseling for Troy; Tiffany Hohwieler, a Family Service mental health therapist who provided counseling for Andrew; Melissa Godfrey, a clinical therapist for Family Service who provided counseling for Ashley; Dr. Glenda Cottam, a licensed clinical psychologist who evaluated Kathleen; Erica Anderson, a licensed mental health practitioner who worked in the intensive family preservation department at Family Service; Marcia Pitlor, a therapist for Family Service who provided counseling for Thomas; Marti Arndt, a Department of Health and Human Services (DHHS) employee who completed the initial

assessment upon Kathleen's family; Darin Nelson, a protection and safety worker for DHHS, Christy Strawder, a Child Protective Services worker with DHHS; Michael Myers, formerly a caseworker for Child Connect; Kathy Grosvenor, a case manager for Child Connect; and Janet Petersen, a case manager for Child Connect. Kathleen testified on her own behalf.

Dr. Lisa Christensen testified that she was Troy's primary therapist from September 1999 through February 2000. She testified that Kathleen continued to blame Troy for the problems the family was having and for the condition the house was in which led to the children's being removed from the home. According to Dr. Christensen, Troy personalizes Kathleen's absence from therapy sessions, and when Kathleen was absent, Troy would "throw himself on the floor, he would cry and scream, tantruming, and it would be for sustained periods of time, up to 30 minutes, where he would just have severe behavioral problems." She stated that Troy is, when "[o]ne-on-one . . . a delight now. He can say please and thank you and he can ask for help when he needs it."

Dr. Christensen testified that in her opinion, it is in Troy's best interests that Kathleen's parental rights be terminated because

> Troy has medical needs. . . . He has to have medication in order to manage. He is on a certain kind of medication where his serum levels have to be checked. And Kath[leen] has not been able to demonstrate that she can make appointments, she cannot follow through on recommendations . . . . He needs to be with somebody who can get him to his medical appointments.

Dr. Christensen also stated that Troy needs a structured, highly predictable environment where he can get one-on-one direction and feedback in order to contain his behaviors and that Kathleen has not shown that she is capable of providing such an environment.

Tiffany Hohwieler testified that she is a mental health therapist who worked with Andrew. According to Hohwieler, Andrew had been treated for depression and anxiety, was falling behind in school, and was having some behavioral disruptions in school. After Andrew was moved to his current foster placement, he was doing well academically and interacting well with other children; however, Hohwieler stated that there were still

emotional concerns regarding Andrew's anxiety and depression regarding Kathleen's failure to follow through on visits and participate in therapy. According to Hohwieler, Andrew is "at risk for internalizing the reason behind his mother's poor choices as something that he failed to do. In many ways he lacks a good sense of himself and tends to associate all of his feelings and thoughts with his mother."

Hohwieler testified that after more than 1 year of therapy, she had not seen any improvement on the part of Kathleen, stating that Kathleen still had poor physical and psychological boundaries with Andrew to such an extent that Kathleen's behavior toward him was inappropriate. In Hohwieler's opinion, it is in Andrew's best interests that Kathleen's parental rights be terminated.

Melissa Godfrey testified that she is a clinical therapist who worked with Ashley. According to Godfrey, when Kathleen was present at family therapy sessions, little interaction between Kathleen and Ashley occurred. According to Godfrey, Ashley has become more assertive with her siblings and talks about her own needs instead of minimizing. Godfrey testified that Ashley likes her school and her foster home and feels like Kathleen has let her down. In Godfrey's opinion, it is in Ashley's best interests that Kathleen's parental rights be terminated.

Marcia Pitlor testified that she was Thomas' therapist. When Thomas first began seeing Pitlor, she stated that he seemed "kind of flat, unemotional, kind of withdrawn, having nightmares." Pitlor testified that she has seen much improvement in Thomas since he first began therapy in that "[h]e seems to be more outgoing, more comfortable, asks questions, admits to his feelings, seems more comfortable expressing them, doesn't have that same flatness to him." Because Pitlor had not had any interaction with Kathleen, she had no opinion regarding whether it was in Thomas' best interests to terminate Kathleen's parental rights.

Erica Anderson testified that beginning in June 2000, she attempted to work with Kathleen's family in the intensive family preservation program. Anderson testified that Kathleen was "discharged" from the program due to her failure to attend any of the scheduled therapy sessions.

Christy Strawder testified that she was assigned as case manager for Kathleen's family in January 2000. She testified that the five children have been in out-of-home placements since July 1999. Strawder testified that Kathleen had not completed a psychiatric evaluation by a licensed psychiatrist, nor did she attend individual counseling with a licensed mental health practitioner or therapist. She also testified that Kathleen had not been consistently involved in the children's family therapy sessions and had only attended five sessions in over 14 months. Regarding the requirements of stable housing and a legal source of income, Strawder testified that Kathleen resides with her father and has not been employed since July 2000. Strawder further testified that Kathleen had not been consistent in visiting her children. In her opinion, it is in the children's best interests that Kathleen's parental rights be terminated because Kathleen had not achieved any of the court-ordered goals, nor had Kathleen been consistent in visiting and providing for her children's emotional or financial needs.

On April 19, 2001, the juvenile court entered an order terminating Kathleen's parental rights to Andrew, Ashley, Thomas, Troy, and Megan under § 43-292(2), (6), and (7). Kathleen has timely appealed to this court.

## ASSIGNMENT OF ERROR

Kathleen's assignments of error can be consolidated into the following assignment: The juvenile court erred in determining that the State proved by clear and convincing evidence that termination of her parental rights was justified under § 43-292(2), (6), and (7).

## STANDARD OF REVIEW

In an appeal from a juvenile court order terminating parental rights, the appellate court tries factual questions de novo on the record; while appellate review is independent of the juvenile court's findings, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Sunshine A. et al.*, 258 Neb. 148, 602 N.W.2d 452 (1999); *In re Interest of Azia B.*, 10 Neb. App. 124, 626 N.W.2d 602 (2001). An order terminating parental rights

must be based on clear and convincing evidence. *Id.* A juvenile's best interests are a primary consideration in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code. *Id.*

## ANALYSIS

On appeal, Kathleen contends that the juvenile court erred in determining that the State proved by clear and convincing evidence that termination of her parental rights was justified under § 43-292(2), (6), and (7).

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Clifford M. et al.*, 261 Neb. 862, 626 N.W.2d 549 (2001). The State must prove these elements by clear and convincing evidence, that is, by the amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Theodore W.*, 4 Neb. App. 428, 545 N.W.2d 119 (1996).

We first address whether the termination was proper pursuant to § 43-292(7), which requires that the State prove that the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months and that termination is in the child's best interests.

The evidence adduced by the State establishes that all five of the children were removed from Kathleen's home on July 22, 1999, and have been continuously in out-of-home placements since that time until the motion to terminate Kathleen's parental rights was filed on December 15, 2000. The amount of time these children have been in out-of-home placements clearly exceeds 15 months out of the last 22 months. Thus, the State proved by clear and convincing evidence that Andrew, Ashley, Thomas, Troy, and Megan have been in out-of-home placements for more than 15 months out of the last 22 months.

We proceed to consider whether terminating Kathleen's parental rights to the children is in their best interests. Our review of the record establishes that Kathleen was ordered by the juvenile court to complete a psychiatric evaluation, attend individual counseling with a licensed mental health practitioner or therapist,

participate in a family preservation program, consistently attend visits with her children, obtain and maintain stable housing, and obtain and maintain a legal source of income. The record further establishes that Kathleen failed to comply with every aspect of the juvenile court's order. Additionally, each therapist, except Pitlor, who had no opinion, opined that it was in the children's best interests that Kathleen's parental rights be terminated.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). A child in interest cannot and should not be suspended in foster care or made to await parental maturity. *In re Interest of Tabitha J.*, 5 Neb. App. 609, 561 N.W.2d 252 (1997).

We find that the State proved by clear and convincing evidence that it was in the children's best interests that Kathleen's parental rights be terminated. Therefore, based upon our de novo review of the record, we find clear and convincing evidence to warrant termination of Kathleen's parental rights under § 43-292(7).

Having determined that the State has established by clear and convincing evidence that termination of Kathleen's parental rights is appropriate pursuant to § 43-292(7), we do not consider issues relating to the sufficiency of the evidence concerning the other statutory provisions identified by the trial court as grounds for termination. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002). See *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000).

Furthermore, we note that because we do not consider whether termination of Kathleen's parental rights was proper pursuant to § 43-292(6), Neb. Rev. Stat. § 43-283.01 (Reissue 1998), which requires reasonable efforts to reunify families, is not applicable to the instant case. Section 43-283.01 is only incorporated into § 43-292(6), not into the remaining subsections of § 43-292. *In re Interest of DeWayne G. & Devon G., supra.* In considering when the issue of reasonable efforts under § 43-283.01 must be reviewed by a juvenile court, the Nebraska Supreme Court stated:

When § 43-283.01 was adopted, the Legislature at the same time amended selected statutes in the juvenile code to indicate the specific stages within juvenile proceedings during

which the juvenile court must consider reasonable efforts to preserve and reunify families pursuant to § 43-283.01. 263 Neb. at 53, 638 N.W.2d at 518. The court identified the following statutes which were amended: Neb. Rev. Stat. §§ 43-284, 43-254, and 43-1315 (Reissue 1998) and § 43-292(6).

■ The court then found that the issue of reasonable efforts if required under § 43-283.01 must be reviewed by the juvenile court in the following situations: (1) when removing from the home a juvenile adjudged to be under subsections (3) or (4) of § 43-247 pursuant to § 43-284; (2) when the court continues a juvenile's out-of-home placement pending adjudication pursuant to § 43-254; (3) when the court reviews a juvenile's status and permanency planning pursuant to § 43-1315; and (4) when termination of parental rights to a juvenile is sought by the State under § 43-292(6). *In re Interest of DeWayne G. & Devon G., supra.*

Since we have determined that termination was proper pursuant to § 43-292(7) and that the State need only establish one of the statutory grounds enumerated in § 43-292, § 43-283.01 is not relevant to our determination in the instant case.

## CONCLUSION

For the reasons discussed above, we find that there was clear and convincing evidence presented to warrant the termination of Kathleen's parental rights to Andrew, Ashley, Thomas, Troy, and Megan. Therefore, the judgment of the juvenile court is affirmed.

AFFIRMED.