upon the same grounds. As we previously concluded, the evidence was sufficient to sustain Warrack's convictions on both counts. Because Warrack fails to allege how he was prejudiced by this action, we reject this claim.

## V. CONCLUSION

We conclude Warrack's arrest was lawful, because he was not arrested until he had willingly stepped from his porch onto the sidewalk and he had no reasonable expectation of privacy on the sidewalk. Therefore, the district court did not err in denying his motion to suppress. In addition, the court properly overruled Warrack's foundational objection to Kozian's testimony, because Kozian's credibility was a matter solely for the jury to determine. We also find that the State adduced sufficient evidence to support Warrack's convictions on both counts. Finally, we reject all six of Warrack's claims of ineffective assistance of counsel because he failed to allege how he was prejudiced by trial counsel's actions. Accordingly, we affirm Warrack's convictions for aiding and abetting delivery of methamphetamine within 1,000 feet of a school and attempted delivery of methamphetamine.

AFFIRMED.

---

In re Interest of Athina M., a child
under 18 years of age.
State of Nebraska, appellee, v.
Darwin M., appellant.
___ N.W.2d ___

Filed January 7, 2014.    No. A-13-189.

1. **Juvenile Courts: Evidence: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Parental Rights: Proof.** Neb. Rev. Stat. § 43-292 (Cum. Supp. 2012) provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child.

3. **Parental Rights: Words and Phrases.** A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights.
4. **Parental Rights.** Parental rights should be terminated only in the absence of any reasonable alternative and as the last resort.
5. **Parental Rights: Evidence: Proof.** To terminate parental rights, the State must prove by clear and convincing evidence that termination is in the child's best interests.
6. **Parent and Child.** The law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Reversed and remanded for further proceedings.

Angelica W. McClure, of Kotik & McClure Law, for appellant.

Joe Kelly, Lancaster County Attorney, and Maureen Lamski for appellee.

IRWIN, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Darwin M. appeals from the decision of the separate juvenile court of Lancaster County terminating his parental rights to his daughter, Athina M. Upon our de novo review, we find that the State failed to prove by clear and convincing evidence that termination is in Athina's best interests. We therefore reverse, and remand for further proceedings.

## BACKGROUND

Darwin is the biological father of Athina, born in September 2010. Although it was undisputed that Darwin was Athina's father, his paternity was confirmed via genetic testing in June 2011. Karla M. is the biological mother of Athina. Darwin and Karla were not married when Athina was born, but were married 3 days after her birth. Athina was removed from Karla's care 2 days after her birth because Karla had had two other children removed from her care and had not corrected the conditions leading to the adjudication of those two children. We note that Darwin is not the biological father of Karla's other

children. Darwin was interviewed following Athina's birth, and it was determined he did not have a stable residence for Athina. Athina was placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS), which placed her in foster care.

Athina was adjudicated in November 2010, due to the faults or habits of Karla. The court found that Athina should remain in the custody of DHHS.

Athina's case came before the juvenile court for numerous review and permanency hearings throughout 2011 and 2012. The parents were provided with numerous services. Karla did not cooperate with services, and her visits with Athina were not productive. Darwin, however, was cooperative with services, including individual therapy, coparenting counseling, parenting classes, and supervised visitation. During the spring and summer of 2012, Darwin's visitations progressed from supervised to monitored to overnight. He made so much progress that Athina was placed in his physical custody on August 9, 2012.

On September 8, 2012, Darwin was arrested and jailed. Athina was returned to the foster home in which she resided prior to her brief placement with Darwin. Darwin eventually pled no contest to making terroristic threats, a Class IV felony. He remained in jail pending his sentencing, which was scheduled for February 26, 2013. Darwin did not have visitation with Athina while he was in jail, because a glass barrier would have separated Darwin and Athina during visits and DHHS did not think it was in Athina's best interests to have visits in this manner due to her young age.

On November 13, 2012, the State filed a motion to terminate Darwin's parental rights to Athina pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Cum. Supp. 2012). The State alleged that Darwin had substantially and continuously or repeatedly neglected and refused to give the child necessary parental care and protection, that reasonable efforts had failed to correct the conditions leading to the adjudication, that the child had been in an out-of-home placement for 15 or more of the most recent 22 months, and that termination was in the child's best interests.

The State also moved to terminate Karla's parental rights to Athina, which motion the juvenile court ultimately granted. But because Karla has not appealed that decision, we will not discuss any evidence presented as to her at the termination hearing. We simply note that at the time of the termination hearing, Darwin and Karla were separated and Darwin testified that their final divorce hearing was scheduled for the following month.

The termination hearing was held on February 11, 2013. Katy Rawhouser, a children and family services specialist with DHHS, was the only witness for the State. Rawhouser began working with Darwin and Athina in May 2012. Rawhouser testified that Darwin's parental rights should be terminated because he was incarcerated at that time and was unable to provide care for Athina. Rawhouser stated that Athina was able to be placed with Darwin for only approximately 30 days "despite a good deal of effort made on the part of [DHHS] to get her there" and that "at this time, [Athina is] in need of permanency."

On cross-examination, Rawhouser testified that Darwin had done everything that he was asked to do; he completed individual therapy, couple's counseling, a parenting class, and supervised and monitored visits. She stated that in May 2012, Darwin had supervised visits with Athina two times each week, and he progressed to having monitored visits and then overnight visits. Rawhouser acknowledged that Darwin was appropriate with Athina, that he had a bond with her, and that there were no safety concerns. When asked the following by Darwin's counsel: "[I]f [Darwin] were to get released at the end of this month, would that change your opinion in regards to terminating his parental rights?" Rawhouser responded, "If he was already released I think we'd be looking at possibly re-evaluating, but given that he's not currently released, no it doesn't change my position."

The court then questioned Rawhouser as follows:

> Q . . . at the time of the removal at Athina's birth, [Darwin] was interviewed, and at that time, he did not have a stable residence or the ability to provide for her; is that your understanding?

A Correct.

Q And it took over approximately two years from birth until he was in a position where you could recommend that — or [DHHS] could recommend Athina be placed in his care?

A That's correct. She was not quite two years old at the time.

Q And do you know when the date of the offense is for the terroristic threat that he is incarcerated for and pending sentencing? Did that occur during the month that Athina was with him?

A I believe so, yes.

. . . .

Q And since he was arrested in September of 2012, has he been incarcerated continuously since that time?

A Yes.

. . . .

Q Does he have a criminal history?

A Yes.

Q Do you know what that is?

A It's a lengthy criminal history. I don't know exactly what's all —

Q Does that — does that include prison sentences; do you know?

A I — I do believe he's got a felony criminal history.

Q And if he were to be released on February 26th of 2013, first of all, nobody as part of this case, know if that's going to happen; is that fair to say?

A That's true.

. . . .

Q And even if the District Court Judge made a decision to release [Darwin], you wouldn't necessarily be asking for Athina to be placed in his care upon his release from incarceration; would that be fair to say?

A That's true.

Q You'd want to do some further assessments in terms of the entirety of [Darwin] and see where things are, where he's living, where he's working, how'd he support her, resuming visitation and contact; is that right?

A Right.

Q And he hasn't had any since he's been arrested, any contact or visitation?

A That's true.

Q So you indicated there are no safety concerns regarding [Darwin]. There could be one in terms of the terroristic threat occurring while he was providing her care?

A There could be.

Darwin also testified at the termination hearing. He stated that he was incarcerated in the Lancaster County jail and was awaiting sentencing on a Class IV felony. Darwin indicated that his criminal defense attorney did not think he would be sentenced to more than a year, "which would be time served because I've been in for six months." Darwin testified that this was his first felony and that his criminal history included misdemeanors, mainly driving violations such as driving on suspension, but did not include assaults or an "aggressive criminal history."

Darwin testified that Athina was with him when he was arrested and when the act was committed. Darwin stated that at the time, he and Athina were with a neighbor and her children, and that when he was arrested, he left Athina with his mother.

Darwin testified that when he is released from jail, he would have housing and a job. He would return to his apartment; he had prepaid several months' rent, and his mother had moved into the apartment temporarily to keep it occupied and to take care of any additional rent. Darwin also testified that his friend owned a tile company and would employ him when he is released from jail.

In its order filed on February 11, 2013, the juvenile court terminated Darwin's parental rights to Athina pursuant to § 43-292(2), (6), and (7) and found that termination was in Athina's best interests. Darwin has timely appealed the juvenile court's termination of his parental rights.

## ASSIGNMENT OF ERROR

Darwin assigns that the juvenile court erred in finding that terminating his parental rights was in Athina's best interests.

## STANDARD OF REVIEW

[1] Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013).

## ANALYSIS

*Grounds for Termination.*

[2] In the Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Darwin's parental rights to Athina, the juvenile court found that Darwin substantially and continuously neglected to give the child necessary parental care and protection (§ 43-292(2)), that reasonable efforts failed to correct the condition which led to the adjudication (§ 43-292(6)), and that the child had been in an out-of-home placement for 15 or more months of the most recent 22 months (§ 43-292(7)).

Darwin does not contest the juvenile court's finding that grounds for terminating his parental rights exist. And having reviewed the record, we find that grounds did exist. Section 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Athina was removed from parental care in September 2010, 2 days after her birth. Other than being placed with Darwin from August 9 to September 8, 2012, Athina has remained in foster care. At the time the motion to terminate parental rights was filed on November 13, Athina had been in an out-of-home placement for nearly 25 out of 26 months. Our de novo review of the record clearly and convincingly shows that grounds for

termination of Darwin's parental rights under § 43-292(7) were proved by sufficient evidence. Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the child's best interests.

*Best Interests.*

[3,4] Darwin argues that the juvenile court erred in finding that terminating his parental rights was in Athina's best interests. Section 43-292 requires that parental rights can be terminated only when the court finds that termination is in the child's best interests. A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004). Therefore, with such severe and final consequences, parental rights should be terminated only "'[i]n the absence of any reasonable alternative and as the last resort . . . .'" See *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 467, 598 N.W.2d 729, 741 (1999). However,

> [w]here a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002).

*In re Interest of Stacey D. & Shannon D.*, 12 Neb. App. 707, 717, 684 N.W.2d 594, 602 (2004).

Initially, we note that the bill of exceptions in this case is composed of only 43 pages, of which 26 pages were testimony. The State's case for termination of Darwin's parental rights was based on Darwin's incarceration and Athina's need for permanency. Regarding Darwin's incarceration, Darwin pled no contest to making terroristic threats. However, no details about the crime or the context in which it occurred were set forth in the juvenile court record. We know only that Darwin and Athina were with a neighbor and her children at the time of the incident.

Darwin was scheduled to be sentenced 2 weeks after the termination hearing; however, no motion appears in the record to continue the termination hearing until after Darwin's sentencing in the criminal case. Terroristic threats is a Class IV felony, which is punishable by up to 5 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). Under the sentencing guidelines, Darwin could be placed on probation. Moreover, Darwin testified that his lawyer did not think he would be sentenced to more than 1 year's imprisonment, which would mean he would be released for time served. Rawhouser testified that if Darwin had already been released, DHHS would possibly reevaluate terminating his parental rights. Since Darwin was not released at the time of the termination hearing, Rawhouser recommended terminating his parental rights.

The visitation reports that were received into evidence at the termination hearing show that Darwin is a loving parent to Athina and that there were no safety concerns. He did have a 3-month period of time in the summer and fall of 2011 when he was incarcerated and was unable to see Athina (the underlying reason for his incarceration does not appear in our record). After his release in October 2011, Darwin resumed visitations with Athina. Darwin was also cooperative with services provided to him. In fact, he made so much progress that Athina was placed with him on a full-time basis in August 2012. Rawhouser acknowledged that without Darwin's September 2012 incarceration, there would be no other reason to remove Athina from his care.

[5] The State must prove by clear and convincing evidence that termination is in Athina's best interests. See *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010). After our review of the record, we find the State failed to meet its burden. The State's only reasons for wanting to terminate Darwin's rights are that he was incarcerated at the time of the termination hearing and that Athina needs permanency. However, there was a possibility that Darwin would have been released just 2 weeks later, which Rawhouser testified would merit a possible reevaluation of termination. Darwin has always been a loving parent to Athina, and by all accounts,

they have a strong bond. Rawhouser testified that there were no safety concerns regarding Darwin, and it was only upon the court's questioning that she stated that there "could be" safety concerns in terms of the terroristic threat occurring while Darwin was providing care for Athina. However, "could be" does not rise to the level of clear and convincing evidence. And we note again that no details about the crime or the context in which it occurred were set forth in the juvenile court record, except to say that Athina was present at the time of the incident. The evidence put forth by the State in this case does not meet the clear and convincing standard necessary to prove that it is in Athina's best interests to terminate Darwin's parental rights, particularly in light of Rawhouser's equivocal testimony.

We note that in its order terminating Darwin's parental rights, the juvenile court gave great weight to Athina's time in an out-of-home placement in this case, noting that Athina had spent 28 of 29 months in an out-of-home placement. The court also stated that Darwin faced a possible period of incarceration of up to 5 years, that Darwin would need to establish he can remain a law-abiding citizen, and that Darwin would need to demonstrate he can maintain a suitable residence and a legal means of support, all of which will take time and result in Athina's spending even more time in an out-of-home placement.

"Regardless of the length of time a child is placed outside the home, it is always the State's burden to prove by clear and convincing evidence that the parent is unfit and that the child's best interests are served by his or her continued removal from parental custody." *In re Interest of Angelica L. & Daniel L.*, 277 Neb. 984, 1006, 767 N.W.2d 74, 92 (2009). In cases that address best interests based on the length of time the child has been in an out-of-home placement, other factors, such as the parent's lack of involvement or inability to make progress, are also present. See *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006) (termination of parental rights was in child's best interests when father knew child was in out-of-home placement since October 2002 but had no face-to-face contact with child until September 2004, 4 months after the

motion to terminate parental rights was filed and 24 months after child was placed in foster care). See, also, *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007) (termination of parental rights was in children's best interests because mother was unwilling or unable to rehabilitate herself; children were removed because of mother's drug use; and more than 3 years after removal, mother tested positive for methamphetamine, missed three subsequent drug tests, and failed to appear for her therapy sessions).

The instant case is distinguishable in that Darwin was a loving and involved parent to Athina. Furthermore, Darwin made significant progress in this case. Between May and August 2012, he transitioned from having fully supervised visits to having Athina placed in his home on a full-time basis. This is not a case in which best interests can be based solely on the length of time Athina has been in an out-of-home placement.

[6] Darwin did plead no contest to making terroristic threats, but we have already established that any potential prison time is speculative and thus should not be a basis for terminating Darwin's parental rights. Although he faced a possible period of incarceration of up to 5 years, he could have been sentenced to probation or released on time served. And Darwin testified that upon his release, he will be moving back into his previous residence and working for a friend. Thus, it appears that Darwin already has a plan in place for getting his life back on track. The law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Jacob H. et al.*, 20 Neb. App. 680, 831 N.W.2d 347 (2013). As stated previously, Darwin did make significant progress in this case, and Rawhouser testified that Darwin is a loving parent to Athina, that he is appropriate with her, that he has a bond with her, and that there are no safety concerns. It was only upon the court's questioning that Rawhouser stated that there "could be" safety concerns in terms of the terroristic threat occurring while Darwin was providing care for Athina. But, as we stated previously, the circumstances surrounding the September 2012 incident are

not set forth in our record. We do not know what impact, other than temporary separation from Darwin, the incident had on Athina. The evidence put forth by the State in this case does not meet the clear and convincing standard necessary to prove that it is in Athina's best interests to terminate Darwin's parental rights. Accordingly, we find that the juvenile court erred in terminating Darwin's parental rights to Athina.

## CONCLUSION

For the reasons stated above, we reverse the order of the juvenile court terminating Darwin's parental rights to Athina and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.