IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF TRISTAN G.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF TRISTAN G., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

DUSTIN B., APPELLANT.


Filed May 10, 2022.    No. A-21-882.


Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Joseph C. Bradley, of Bradley Law, P.C., L.L.O., for appellant.

Cara Stirts and Jackson E. Stokes, Deputy Douglas County Attorneys, for appellee.


PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Dustin B. appeals from the decision of the separate juvenile court of Douglas County terminating his parental rights to his son, Tristan G. We affirm.

## BACKGROUND

### PROCEDURAL BACKGROUND

Dustin and Catelyn G.-B. are the biological parents of Tristan, born in November 2019. Dustin and Catelyn were married, but they separated in October 2020. The juvenile court terminated Catelyn's parental rights to Tristan during these same juvenile proceedings. Because she is not part of this appeal, she will only be discussed as necessary.

- 1 -

Tristan was born 3 weeks early, experienced a collapsed lung during delivery, and had a slightly enlarged aorta and clubfoot; he spent several weeks in the hospital's "NICU." He was removed from his parents' care before he was to be released from the hospital because there were concerns about his safety. Catelyn previously had three other children removed from her care in other states because of her mental health needs and history of physical abuse; Catelyn relinquished or had her parental rights terminated to those three children. Additionally, Dustin was aware of Catelyn's history with child protective services but had not taken action to ensure Tristan's safety, and Dustin and Catelyn had not resolved their housing issue.

The State filed an initial and supplemental petition on November 27, 2019. The supplemental petition alleged that Tristan fell within Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The State alleged: Dustin failed to provide proper parental care, support, supervision, and/or protection for Tristan; Dustin failed to provide safe, stable housing for Tristan; and for the above reasons, Tristan was at risk for harm. The State also filed a motion for the immediate temporary custody of Tristan to be placed with the Nebraska Department of Health and Human Services, and the juvenile court entered an ex parte custody order that same day. Tristan has since remained in the custody of the Nebraska Department of Health and Human Services and in foster care. The supplemental petition was subsequently amended by interlineation on December 9 to reflect that Tristan G. was also known as Tristan B.

A contested adjudication hearing was held on March 18, 2020. The juvenile court found the allegations that Dustin failed to provide safe, stable housing for Tristan, and that Tristan was at risk for harm were true by a preponderance of the evidence and adjudicated Tristan as being within the meaning of § 43-247(3)(a). The court found there was insufficient evidence to show that Dustin failed to provide proper parental care, support, supervision, and/or protection for Tristan, and the court dismissed that allegation. The matter proceeded to immediate disposition and the court ordered Dustin to work with a family support worker for assistance with housing and employment, enroll in and successfully complete a parenting class, undergo a chemical dependency evaluation and participate in any treatment and/or services as recommended in the evaluation, undergo a psychological evaluation with a parenting assessment and IQ testing, undergo a psychiatric evaluation and participate fully in any treatment and/or services as recommended in the evaluation, attend all medical appointments for Tristan, maintain contact with all case professionals, and be provided with supervised visitation.

Following a continued disposition hearing on May 27, 2020, Dustin was also ordered to: obtain and maintain safe and adequate housing to provide for himself and Tristan; obtain and maintain a legal source of income to provide for himself and Tristan; not possess or ingest alcohol and/or controlled substances unless prescribed by a licensed, practicing physician; and undergo random, frequent, and observed drug testing. Following a review and permanency planning hearing in September, Dustin's court-ordered requirements remained substantially similar to those from May, except that he was now also ordered to complete relinquishment counseling.

Following a review and permanency planning hearing on March 2, 2021, the juvenile court found that no further reasonable efforts were required for reunification in this matter. Dustin was ordered to work with and participate fully in outpatient mental health therapy, cooperate fully with all medication management appointments, and take all medications as prescribed. The remainder of his requirements remained substantially similar to those from May 2020.

On April 20, 2021, the State filed a motion to terminate Dustin's parental rights to Tristan pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016). The motion alleged as follows: Dustin substantially and continuously or repeatedly neglected and refused to give Tristan or a sibling of Tristan necessary parental care and protection. Reasonable efforts to preserve and reunify the family had failed to correct the conditions leading to the adjudication of the child under § 43-247(3)(a). Tristan had been in an out-of-home placement for 15 or more of the most recent 22 months. Termination of Dustin's parental rights was in Tristan's best interests.

TERMINATION HEARING

A hearing on the motion to terminate Dustin's parental rights was held on August 13 and October 1, 2021. Numerous witnesses testified and several exhibits were received into evidence. Dustin did not testify in his own behalf. A summary of the relevant evidence follows.

Heather Werthmann, a case manager from St. Francis Ministries, testified that she has been assigned to this case since December 2019. Tristan was removed from Dustin's care in November because Dustin did not have a safe and stable home. Tristan was born with a collapsed lung, has a heart condition and clubfoot; he has "significant medical needs."

Tristan's foster mother testified that Tristan had been living with her since he was 2 months old. She said that in addition to the collapsed lung, enlarged aorta, and clubfoot, Tristan has had RSV and other childhood infections. According to the foster mother, it is important for Tristan to have a parental figure who understands his medical needs, will get him to appointments, and consistently watches for any signs or symptoms as he grows and becomes more active.

Werthmann has kept in regular contact with Dustin during this case and he participated in the team meetings. Werthmann testified about Dustin's progress, or lack thereof, with court-ordered requirements. Dustin was ordered to attend Tristan's medical appointments. Dustin attended for about the first 6 months, "he attended . . . all of the casting, [Tristan's] surgery." After the first 6 months, Dustin stopped attending the appointments. Werthmann and Dustin talked about the appointments and he "knows when those appointments are." When Werthmann took Tristan to the hospital (timing not specified), she let Dustin know and Dustin said he would come to the hospital but he "did not show up." Dustin did not attend any of Tristan's appointments in 2021. Werthmann stated, "[Tristan] is a medical-needs baby and . . . he needs a provider that knows all of his medical needs, what is going on at every doctors [sic] appointment."

According to Werthmann, Dustin was released from family support services "a couple months ago" because "[t]hey stated that he informed them that he didn't have anything to work with them on, as he already had income, housing, and he was working on visitation." However, Dustin did not consistently attend his visits with Tristan and had been "discharged on several occasions" from "several [visitation] companies."

Jenny Lewis is an in-home family services supervisor at Apex Family Care, a company that provided family support and supervised parenting time for Dustin. Lewis testified that family support and parenting time were provided to Dustin beginning in December 2019. Dustin was supposed to have parenting time five times each week, for 2 hours each visit. He attended 18 of the 33 scheduled visits; seven or eight visits were cancelled because Tristan was ill, and four or five visits were cancelled due to Dustin's lack of transportation. During family support, Dustin was supposed to work on protective parenting, understanding Tristan's medical issues, budgeting,

and resources. However, Dustin was discharged on January 27, 2020, because he moved out of Nebraska and Apex was no longer able to provide services.

Guadalupe Petro, a family consultant at Boys Town, testified that Dustin was referred for court-ordered services in August 2020. Dustin was to engage in family support and supervised parenting time through Pathways to Permanency. Petro first met with Dustin in mid-August. The identified goals were for Dustin to attend parenting time and provide for Tristan's needs during visits, get a chemical dependency evaluation, follow up with medication management, and continue in stable housing. When Petro tried to schedule family support, Dustin was "busy" or "didn't have the time," so Petro decided to try doing family support during parenting time. Parenting time occurred once or twice per week at Dustin's home in Omaha, Nebraska; Dustin was later evicted from that home.

According to Petro's report that was received into evidence, Dustin's attendance at visitation was as follows. In September 2020, visits were scheduled twice per week with both Dustin and Catelyn participating, and Dustin attended seven visits. In October, visits were scheduled twice per week, but after Dustin and Catelyn separated in mid-October, each parent had one visit per week; Dustin attended all six of his visits. In November, Dustin attended all three of his scheduled visits. In December, Dustin attended three of his scheduled visits and cancelled at least one visit. In January 2021, Dustin attended only one of his scheduled visits. Petro testified that Dustin was unsuccessfully discharged from services on February 5, 2021, for lack of engagement.

Lewis testified that Apex received a second referral for Dustin in April 2021, and supervised parenting time was again provided, this time twice per week for 2 hours each visit; the supervised parenting time was still occurring at the time the termination hearing commenced on August 13. During the second referral, 25 visits had been offered, and three of those were cancelled because of Dustin; two because he failed to confirm the visits as required, and the other one because "something came up." Since April, the only parenting concern noted for Dustin was that he was not able to provide diapers for Tristan during one visit in June. Lewis stated that Dustin and Tristan appear to enjoy their time together. The foster mother testified that, for the month prior to the August 13 hearing, in addition to in-person supervised visits, Dustin also did a video chat with Tristan every weekend.

Werthmann, who testified on October 1, 2021, stated that she spoke to Dustin about the need to regularly attend visits. His visits had been cut down from 2 days per week to 1 day per week and she talked with him about what he needed to do to get his visits increased and what would happen if he continued to miss visits. Dustin said he would attend visits but did not do so. He was "unsuccessfully discharged [from visitation services] yesterday for noncompliance." Dustin did complete a parenting class on May 27.

Dustin was ordered to follow all recommendations of his psychological and psychiatric evaluations. Werthmann testified that the recommendations were outpatient mental health therapy, ongoing psychiatric medication, to monitor substance abuse, and to closely monitor any training or education for parenting. She said that Dustin informed her that he was currently doing medication management and outpatient therapy, but Werthmann had not spoken with the therapist or medication management because she did not have a release to do so. Werthmann said they talked about getting releases at every monthly family team meeting, but no release of information

had been signed. According to Werthmann, Dustin has agreed to sign a release "[a]t the next visit in October."

Werthmann confirmed that throughout the course of this case, Dustin admitted to her that he had mental health concerns which was the reason he received social security benefits. He also admitted to her that he had a prior drug history. Dustin's mental health concerns and drug history needed to be addressed to determine whether Tristan would be safe with his father.

David Cote, the drug testing supervisor at Capstone Behavioral Health, testified that Dustin was a client in June 2020. Dustin was scheduled to be drug tested two times each week. Cote stated that Dustin had presumptive positive tests for methamphetamine and amphetamine. Cote confirmed that Dustin informed him about prescriptions he was taking, and Cote denied that any of those would have shown up on a drug test. The Capstone reports for October to December were received into evidence. The reports show that in October, Dustin completed 2 tests (presumptive positive for "MAMP" and "AMP") and missed 7 tests (1 unable to produce sample, 3 transportation issues, 3 failures to respond). In November, Dustin completed 3 tests (negative for all tested substances) and missed 5 tests (all failures to respond). In December, Dustin completed 1 test (presumptive positive for "MAMP") and missed 10 tests (1 refusal, 9 failures to respond).

Cote testified that Dustin's reasons for noncompliance were transportation issues or lack of a phone. Dustin was offered bus tickets to assist with transportation. If Dustin did not have a phone, Capstone tried to call Catelyn's phone to let Dustin know he needed to test, and Capstone always tried to test Dustin and Catelyn on the same days. Eventually, Capstone started going to the parenting time visits to drug test Dustin. At first, when testing occurred at visits, Dustin's compliance improved, "[b]ut then that even stopped." Cote stated, "We started running into problems with that. Like if the visit was supposed to be . . . from 11:00 till 1:00, and we showed up at 11:00 . . . it was 'You're on our time now. We're going to make you wait.'" The tester would have to wait at the visit for 2 hours before they were able to test Dustin, and "after that it just went downhill." Capstone would call Dustin on the day of his scheduled visit, but he would not respond; Capstone would not just show up to a scheduled visit "[b]ecause we don't know if they had canceled the visit that day," the client "still [has] to return a phone call to us." Dustin was discharged on December 31, 2020, for "[n]oncompliance over 30 days."

Werthmann stated that Dustin did complete a second chemical dependency evaluation in February 2021, but Werthmann did not receive the recommendations; "I did follow up with the company . . . and they informed me that there was an issue with the evaluation and the evaluator left and they could not get it to me." Dustin was to refrain from drugs and alcohol, however he was not completing his drug testing. Werthmann said, "I ask him at every meeting if he will do his drug testing so I can place another referral, and he refuses at every meeting to do the drug testing." Because he refuses to participate, Werthmann cannot ascertain if he is sober.

Werthmann opined that it was in Tristan's best interests to terminate Dustin's parental rights. She said,

> It is my opinion that throughout the life of the case, that Dustin has not consistently provided those drug tests on a consistent basis. I've asked him throughout this case to do that. I'm not able to consistently see if he is safe and sober throughout this case. He has not provided me with any releases for his medication management or the individual therapy. So I am not able to discern if he is participating in those services. He just was discharged

from his parenting time again. So he is not able to follow through with those orders. And Dustin is not participating in those medical appointments on a consistent basis and has not been there through any of those medical appointments and seen what Tristan needs to be followed through for the rest of his life for those medical appointments. And Tristan does deserve permanency, as he has been out of the home for 23 out of the 24 months of his life.

According to Werthmann, Dustin had a legal source of income and obtained safe and stable housing.

JUVENILE COURT'S DECISION

In an order entered on October 8, 2021, the juvenile court found by clear and convincing evidence that statutory grounds for termination of Dustin's parental rights existed pursuant to § 43-292(2), (6), and (7). The court also found that termination of Dustin's parental rights was in Tristan's best interests. The court terminated Dustin's parental rights to Tristan accordingly.

Dustin appeals.

ASSIGNMENTS OF ERROR

Dustin assigns, restated, that the juvenile court erred in finding that (1) statutory grounds existed to terminate his parental rights pursuant to § 43-292(2) and (6), and (2) termination of his parental rights was in Tristan's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

ANALYSIS

STATUTORY GROUNDS FOR TERMINATION

The State sought to terminate Dustin's parental rights under § 43-292(2), (6), and (7). The juvenile court found all three grounds existed by clear and convincing evidence.

Section 43-292(7) allows for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." By the plain and ordinary meaning of the language in § 43-292(7), there are no exceptions to the condition of 15 out of 22 months' out-of-home placement. *In re Interest of Mateo L. et al., supra*. Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Mateo L. et al., supra*. In other words, if the 15-out-of-22 months' period is met, § 43-292(7) is met. See *In re Interest of Mateo L. et al., supra*. In this case, Tristan was removed from Dustin's care on November 27, 2019. He remained out of home through at least October 1, 2021, when the termination hearing concluded; this satisfies the 15-out-of-22 months' period.

The State has shown clearly and convincingly that § 43-292(7) exists as a statutory basis for terminating the parental rights of Dustin. And since any one of the bases for termination codified in § 43-292 can serve as the basis for termination, we need not consider the sufficiency of the evidence concerning the other statutory bases for termination. *In re Interest of Mateo L. et al., supra.*

Furthermore, we note that because we do not consider whether termination of parental rights was proper pursuant to § 43-292(6), Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2020), which requires reasonable efforts to reunify families, it is not applicable to the instant case. Section 43-283.01 is only incorporated into § 43-292(6), not into the remaining subsections of § 43-292. See *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002). See, also, *In re Interest of Mateo L. et al., supra* (reasonable efforts to reunify family required under juvenile code only when termination is sought under § 43-292(6)). We next consider whether termination is in Tristan's best interests.

BEST INTERESTS AND UNFITNESS

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* Although the term "unfitness" is not expressly stated in § 43-292, the Nebraska Supreme Court has said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al., supra.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Leyton C. & Landyn C., supra.* The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id.* We have previously set forth the evidence presented at the termination hearing, and we will not recount it again here.

Dustin has complied with some of the court-ordered requirements. He has a legal source of income and has apparently obtained safe and stable housing. Dustin has also completed chemical dependency evaluations and a parenting class. However, as stated by the juvenile court,

> [Dustin], while in compliance with some of the Court orders, has failed to put himself in a position to reunify with his child or even be present with the child unsupervised based on his lack of compliance with other orders of the Court, as well as his actions that have led to his discharge from multiple providers for Court-ordered services since November of 2019.

Notably, Dustin was unsuccessfully discharged from drug testing services for lack of compliance, and he cannot get another referral for drug testing because he refuses to participate in that service. Additionally, the day before the termination hearing concluded, Dustin was once again discharged from visitation services due to lack of compliance. At the time, he was still at a supervised

visitation level for only a minimal number of hours per week. Dustin quit participating in Tristan's medical appointments, even though Tristan has significant medical needs and requires a care provider who understands those needs. Dustin failed to sign releases for his individual therapy and medication management, thus preventing Werthmann from verifying his compliance with his participation requirement.

The juvenile court found that it was in the best interests of Tristan that Dustin's parental rights be terminated. We agree. Tristan had been out of Dustin's care for 22 months at the time the termination hearing concluded. Tristan deserves permanency. "Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity." I*n re Interest of Walter W.*, 274 Neb. 859, 872, 744 N.W.2d 55, 65 (2008). And where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Ryder J., supra*. The State proved that Dustin was unfit, meaning that he has a personal deficiency or incapacity which has prevented, or will prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to Tristan's well-being. See *In re Interest of Leyton C. & Landyn C., supra*. We further find that there is clear and convincing evidence that it is in Tristan's best interests to terminate Dustin's parental rights.

CONCLUSION

For the reasons stated above, we affirm the order of the juvenile court terminating Dustin's parental rights to Tristan.

AFFIRMED.